UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

APRIL LATRICE SPENCER,

Debtors.

CHAPTER 11

CASE NO.: 22-52524-BEM

## DISCLOSURE STATEMENT AS TO CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION PROPOSED BY RENASANT BANK

Renasant Bank ("Renasant"), through its undersigned counsel, hereby submits the following Disclosure Statement as to the proposed chapter 11 plan of liquidation (the "**Plan**") for April Latrice Spencer ("**Debtor**") pursuant to section §1125 of Title 11 of the United States Code (the "**Bankruptcy Code**"):

INTRODUCTION AND SUMMARY OF PLAN

The Debtor filed a voluntary petition (the "Petition") for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia on April 1, 2022.  Since the filing of her bankruptcy case, the Debtor has remained in possession and no Trustee has been appointed.  As of the close of business on August 1, 2022, the Debtor had filed no plan of reorganization, nor had she requested any extension of her exclusive right file a plan during the first 120 days of her bankruptcy case.  Renasant therefore has filed a creditor's liquidating plan and this disclosure statement is submitted as providing "adequate information" pursuant to 11 U.S.C. §1125, provided however, that this submission by Renasant is limited to information provided to the plan proponent prior to the filing of the Debtor's bankruptcy case, the pleadings, schedules and reports filed by the Debtor post bankruptcy and a current appraisal of real estate owned by the Debtor dated June 24, 2022.

The Plan contemplates the sale of substantially all the Debtor's non-exempt assets  by way of a Liquidating Trust (the "Sale").  As of the Petition Date on April 1, 2022, the principal assets of the Debtor consisted of real estate located at 648 Carriage Way, N, Atlanta, Georgia 30327 ("Carriage Way") which had an appraised value of $1,995,000 as of June 24, 2022. The Debtor further had non-exempt personal property, which according to her bankruptcy Schedules, had a value of $53,895.72 exclusive of her two Mercedes vehicles valued in the aggregate at $120,000.00 (less $15,000 of claimed exemptions) and any valuation of her ownership interest in a medical practice known as Just Breast, LLC.  Renasant is the holder of a third position undersecured claim against Carriage Way in the amount of $412,893.12, less payments received from Just Breast, LLC since the bankruptcy Petition Date.   The other scheduled and/or filed claims against the bankrupt estate are the claim of Ameris Bank in the amount of $1,530,059.39, less any post-petition payments, which is secured by a first position lien on Carriage Way, secured tax claims totaling

$122,404.25, priority tax claims of $76,735.13 and unsecured claims of $96,238.83 (collectively the priority and unsecured claims are designated as the "Carve-Out Claims"). Renasant proposes to pay all or a part of the Carve-Out Claims by way of "gifting" a portion of its proceeds of sale of Carriage Way and waiving any deficiency claim it may have as an unsecured creditor. In the absence of these voluntary concessions by Renasant, it appears that funds would not be available for distribution to pay some or all of the Carve-Out Claims.

This Disclosure Statement must be approved by the Court, after notice and a hearing, prior to solicitation of acceptances for the Plan. The information contained in this Disclosure Statement is made as of the date hereof, unless another time is specified. Neither the delivery of this Disclosure Statement, nor any exchange of rights and information made in connection herewith, nor any act in reliance hereon, should create under any circumstances an implication that there has not been a change in the facts underlying the statements set forth herein.

No representations concerning the Debtor, the extent of her liabilities, the value of her properties and assets, or the value of any distributions offered to holders of claims or investor interests in connection with the Plan, are authorized except as specifically denominated in this Disclosure Statement.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan, and nothing contained herein will constitute an admission of any fact or liability, or be admissible in any proceeding involving the Debtors or any other party, or be deemed to be advice on the tax or other legal effects of the Plan.

## EXPLANATION OF CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. The formulation and confirmation of a reorganization plan are the primary goals of a Chapter 11 case. A reorganization plan is the vehicle for satisfying, to the extent possible, the Claims against and Interests in the Debtor.

Holders of Claims and Interests whose Claims or Interests are impaired by the Plan are afforded the opportunity to vote to accept or reject the Plan. A Class of Claims or Interests is impaired if the Claims or Interests constituting that Class are not paid in full or if the Claims or Interests are affected by the Plan. The Bankruptcy Court will determine whether the impaired Classes have accepted the Plan by determining whether sufficient acceptances have been received from the Holders of Claims in such Classes. An impaired class of Claims will be determined to have accepted the Plan if the Holders of Allowed Claims in that Class casting votes in favor of the Plan (I) hold at least two thirds in amount of the Allowed Claims of the Holders in such Class who actually vote on the Plan and (ii) comprise more than one half the number of Holders of the Allowed Claims in such Class who actually vote on the Plan.

The vote of the Class binds all members of the Class. Thus, if a Class votes to accept the Plan, the provisions of the Bankruptcy Code designed to protect rejecting Classes cannot be invoked even by members of that Class who voted to reject the Plan. Conversely, if a Class rejects

the Plan, the member of such Class who voted to accept the Plan will be deprived of the benefits of the Plan if not confirmed. Each subclass is treated as a separate Class for voting purposes.

The Bankruptcy Code does not require that every Class of Claims and Interests vote in favor of the Plan. The Plan, however, must be accepted by at least one Class of Holders of Claims or Interests impaired under the Plan. The Bankruptcy Court may confirm the Plan notwithstanding the rejection of the Plan by one or more Classes of Claims or Interests in what is inelegantly referred to as a "cram down." The criteria under which the Bankruptcy Court may Confirm the Plan over the objection of one or more Classes of Claims or Interests are set forth in Section 1129(b) of the Bankruptcy Code and, among other requirements, include the requirement that the Bankruptcy Court find, with respect to each Class that does not accept the Plan, that the Plan does not discriminate unfairly against such Class, that the Plan is fair and equitable as to such Class, and that the value or benefits to be distributed to the members of such Class will not be less than the members of that Class would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. The treatment proposed by the Debtors for certain Holders of Claims not accepting the Plan is detailed in another Article of the Plan.

Renasant believes that the Plan as proposed satisfies all of the statutory requirements imposed by Section 1129 of the Bankruptcy Code. Any objections to the Plan filed and prosecuted by a party in interest, however, may prevent or delay Confirmation if the Court allows the objection, or appeals of a denial of an objection are pursued.

## ARTICLE 1 - DEFINITIONS

Unless otherwise defined, the capitalized terms contained in this Disclosure Statement shall have the same meanings as described in the Plan. All capitalized terms used in this Disclosure Statement not defined herein or in the Plan, but which are defined in the Bankruptcy Code, shall have the respective meanings ascribed in the Bankruptcy Code. All capitalized terms used but not defined in this Disclosure Statement, in the Plan or in the Bankruptcy Code shall have the respective meanings ascribed in the Bankruptcy Rules.

"**Administrative Claim**" means a Claim incurred by a Debtor on or after the Petition Date and before the Effective Date for costs or expenses of administration of the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of operating the businesses of the Debtor or preserving the Estate, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 330, 331, or 503 of the Bankruptcy Code

"**Administrative Claims Bar Date**" shall have the meaning set forth in Article 6 of this Plan.

"**Affiliate**" means with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code as if such Person was a debtor in a case under the Bankruptcy Code.

"**Allowed,**" when used in the context of a Claim, means: (a) any Claim or Administrative Claim, proof or request for payment, as the case may be, of which was Filed with the Bankruptcy Court on or before the applicable Bar Date or Administrative Claims Bar Date (as applicable), or

which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent for which no contrary or superseding proof of claim has been Filed, and which, in either case, is a Claim or Administrative Claim as to which no objection to the allowance thereof has been Filed within the applicable period of limitation (if any) for objection to Claims or Administrative Claims set forth in this Plan or as otherwise fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order (to the extent such claim is allowed in whole or in part), or (b) a Claim or Administrative Claim that is allowed (i) in a Final Order or (ii) pursuant to the terms of this Plan.

"**Avoidance Actions**" means Causes of Action arising under sections 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code that remain assets of the Estates following the Sale. Because the Plan Proponent is not in possession of the Estate, evaluation of these claims is reserved to the Liquidating Trustee for further identification and prosecution.

"**Ballot**" means the form distributed to each holder of an impaired Claim entitled to vote on the Plan, on which is to be indicated, among other things, acceptance or rejection of the Plan.

"**Ballot Date**" means the date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of Ballots pursuant to the terms and provisions of the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended to the extent such amendment is applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Georgia or such other court having jurisdiction over this Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and the  local rules of the Bankruptcy Court, as now in effect or hereafter amended to the extent such amendment is applicable to the Chapter 11 Cases.

"**Bar Date**" means: (i) such dates set forth in this Plan or (ii) otherwise designated by the Bankruptcy Court as the last dates for filing proofs of Claim (but not Administrative Claims and Fee Claims for which the Administrative Claims Bar Date and Fee Claims Bar Date shall apply), as the case may be, against the Debtor.

"**Business Day**" means any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006(a).

"**Cash**" means cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

"**Causes of Action**" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown and whether asserted or unasserted, including

Avoidance Actions and actions to recover undisclosed assets from the Debtor. Because the Plan Proponent is not in possession of the Estate, evaluation of these claims is reserved to the Liquidating Trustee for further identification and prosecution.

"**Claim**" means a claim as defined in section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" shall mean the date 90 days after the Effective Date of this Plan.

"**Class**" means each category of Holders of Claims or Debtor's Interests.

"**Confirmation Date**" means the date of entry of the Confirmation Order on the docket of the Bankruptcy Court.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of this Plan.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the same may thereafter be modified by the Bankruptcy Court entered in each of the Chapter 11 Cases.

"**Creditor**" means a Holder of Claim(s) against the Debtor including, without limitation, a Claim that arose on or before the Petition Date or a Claim against the Estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

"**Debtor**" shall mean Dr. April Latrice Spencer, aka April L. Speed.

"**Debtor's Interests**" means any share of the membership interests or equity security (as defined in Bankruptcy Code section 101(16)) of the Debtor outstanding on the Effective Date, including, inter alia, any rights of any Person or Entity to purchase or demand the issuance of any membership interest or economic interest related thereto, or any of them.

"**Disbursing Agent**" means the Liquidating Trustee.

"**Disputed Claim**" means any Claim or Administrative Claim (i) as to which a timely objection or request for estimation in accordance with the Bankruptcy Code and Bankruptcy Rules, or otherwise disputed in accordance with applicable law, has been interposed and (ii) that has not been withdrawn or determined by a Final Order.

"**Disputed Claims Reserve**" means a reserve, if any, of Cash for the relevant Class, established pursuant to this Plan for the payment or other satisfaction of Disputed Claims that become, in whole or part, Allowed Claims after the Effective Date.

"**Distribution(s)**" means the distribution of Cash or other Property to be made in accordance with this Plan.

"**Distribution Date**" means, with respect to any Allowed Claim, any date upon which a Distribution is made in accordance with this Plan, including dates of both interim and final Distributions.

"**Effective Date**" means the Business Day this Plan becomes effective which shall be fifteen (15) days after the entry of a final, non-appealed Confirmation Order by the Court.

"**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

"**Estate**" means the estate of the Debtor created in this chapter 11 case pursuant to section 541 of the Bankruptcy Code.

"**Executory Contract**" means any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person or Entity.

"**Fee Application**" means any application of any Professional in which a Fee Claim is asserted.

"**Fee Claim**" means a claim under sections 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

"**Fee Claim Bar Date**" has the meaning set forth in Section 2.6 of the Plan.

"**File**", "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court.

"**Final Order**" means an order entered by the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, reargument or rehearing has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"**General Unsecured Claims**" means any Claim against the Debtor that is unsecured, other than Priority Claims.

"**Holder**" means a Person or Entity holding a Claim or Debtor's Interest.

"**Impaired**" shall have the meaning set forth in section 1124 of the Bankruptcy Code.

"**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code, or a judicial lien as defined in section 101(36) of the Bankruptcy Code and includes, without limitation,

mortgages, deeds of trust, security interests, conditional sale or other retention agreements, mechanic's liens, pledges, judgments, demands, easements, defects, options, liabilities, obligations, interests, levies, assessments, defenses, setoffs, recoupments, title retention contracts, encumbrances, leases, subleases, agreements, commitments, options to purchase, rights of first refusal and restrictions of all kinds.

"**Non-Exempt Property**" shall mean all assets of the Debtor which are not exempt or fully claimed exempt pursuant to applicable law and as reflected upon Schedule C of the Debtor's Schedules.

"**Liquidating Trust**" shall mean a trust created primarily for the benefit of all Creditors of the Debtor, which shall, among other things, administer and distribute the assets available on account of the Allowed Claims of Creditors under this Plan, and with respect to which, the Liquidating Trustee will act as Disbursing Agent.

"**Liquidating Trust Agreement**" means the agreement to be executed among the Liquidating Trustee, Renasant and the Debtor, establishing the Liquidating Trust, substantially in the form set forth in a Plan Supplement, pursuant to which the Liquidating Trustee shall manage and administer the Liquidating Trust and distribute the proceeds thereof.

"**Liquidating Trustee**" means the trustee of the Liquidating Trust.  The Liquidating Trustee will also serve as the Disbursing Agent for making Distributions to Holders of Allowed Claims.  Renasant proposes to appoint Mr. Christopher Tierney of Moore Colson as the Liquidating Trustee.

"**Periodic Distribution Amount**" means, with respect to each Periodic Distribution Date, the amount of Cash equal to the Pro Rata Share of the Property assigned to the Liquidating Trust pursuant to the Plan, to which holders of Allowed General Unsecured Claims are entitled, if any.

"**Periodic Distribution Date**" means,  such Business Day selected by the Liquidating Trustee, in its sole and absolute discretion; provided, however that Distributions shall not be made more than more than thirty (30) days after the closing of any sale of the Real Estate, absent other order of Court.

"**Person**" means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

"**Petition Date**" means April 1, 2022, the date that the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code.

"**Plan**" means this document and all attachments, exhibits and schedules hereto, and any amendments or modifications hereof.

"**Plan Supplement**" means, a separate volume, to be filed with the clerk of the Bankruptcy Court, including, among other documents, a form of the Liquidating Trust Agreement.

715033:1:ATLANTA

"**Priority Claim**" means any Allowed Claim asserted against any Debtor, other than an Administrative Claim that is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

"**Professionals**" means those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with section 327 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court in a Final Order issued pursuant to section 503(b)(4) of the Bankruptcy Code, or (iii) for which compensation and reimbursement is provided pursuant to this Plan.

"**Property**" means all property and interests in property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, existing on the Effective Date.

"**Pro Rata Share**" means, as of any certain date, with respect to any Allowed Claim in any Class, or set of Classes (in whole or in part), the proportion that such Allowed Claim bears to the aggregate amount of all Allowed Claims in such Class or set of Classes (in whole or in part).

"**Real Estate**" means the real property located at 648 Carriage Way, N, Atlanta, Georgia 30327 ("Carriage Way").

"**Related Person**" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity-holders, officers, directors, employees, representatives, advisors, attorneys, agents and professionals, in each case acting in such capacity, and any Person claiming by or through any of them.

"**Released Parties**" shall mean (i) the Debtor, (ii) any Holder of the Debtor's Interests, (iii) the Liquidating Trustee, (iv) Renasant and (v) the foregoing entity managers, members, officers, directors, principals, employees, agents, advisors, attorneys, accountants, consultants, representatives, and other professionals, in each case in their capacities as such and not in any other capacity, provided however, that the Debtor shall not be released from any avoidance action or causes of action to recover undisclosed assets identified by the Liquidating Trustee.

"**Sale**" means the sale, transfer, conveyance and assignment of all right, title and interest in and to Real Estate as defined herein, the proceeds of which shall be distributed among Holders of Claims in accordance with the terms of the Plan as provided by Section 1123 of the Bankruptcy Code.

"**Sale Order**" means a final order entered by the Bankruptcy Court in form and substance reasonably acceptable to the Purchaser (i) approving the Sale of the Real Estate, (ii) finding that notice of the hearing concerning approval of said sale was given in accordance with the Bankruptcy Code and constitutes such notice as is appropriate under the particular circumstances and that Purchaser is a "good faith" Purchaser entitled to the protections afforded by Section 363(m) of the Bankruptcy Code, and (iii) providing for the vesting of the purchased assets in the Purchaser, free and clear of all Encumbrances, as provided in and to the maximum extent permitted by 11 U.S.C. §§ 363(b) and (f).

"**Schedules**" means the Debtor's Schedules of Assets and Liabilities filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they may be amended from time to time.

"**Secured Claim**" means all or that portion of an Allowed Claim existing on the Effective Date, to the extent that such Claim is treated under this Plan as not greater than the value of the assets of the Debtor that the Bankruptcy Court finds are valid, perfected and unavoidable security for such debt, in accordance with section 506(a) of the Bankruptcy Code and this Plan.

"**Unimpaired**" means any Claim that is not Impaired.

"**Unsecured Claim**" means any Claim that is not secured by a valid, perfected and unavoidable Lien or a Letter of Credit posted by the Debtor as account parties, as set forth in this Plan or as determined pursuant to a Final Order of the Bankruptcy Court, other than Administrative Claims and Priority Claims.

## ARTICLE 2 – HISTORY AND DESCRIPTION OF THE DEBTOR

GENERAL INFORMATION:

Dr. April Latrice Spencer is the individual Debtor in this bankruptcy case. Dr. Spencer is a 2003 graduate of the Morehouse School of Medicine and a 2008-2009 Fellow of the M.D. Anderson Cancer Center. Dr. Spencer specializes in reconstructive breast surgery for cancer survivors. The Debtor is the sole Member of an entity known as Just Breast, LLC which is the corporate entity for her medical practice located in Atlanta, Georgia. Her only known source of compensation is from Just Breast, LLC.

PRIOR FINANCIAL STATEMENTS:

Per a February 28, 2017 Personal Financial Statement submitted to Renasant by the Debtor, the Debtor had cash on hand of $236,910.00, marketable stocks valued at $9,893.00, vehicles and medical equipment valued at $473,900.00, real estate valued at $1,625,000.00, retirement accounts having a value of $207,900.00, jewelry valued at $113,150.00 and artwork valued at $818,000.00 for a total of $3,484,753.00.

Per a September 21, 2021 Financial Statement of Debtor submitted to Renasant by the Debtor, the Debtor then had cash on hand of $16,200.00, a 2016 Mercedes valued at $64,000.00, loans due to the Debtor in the amount of $39,000.00, college funds for her children having a value of $14,500.00, furs valued at $16,000.00 real property valued at $1,800,000.00 and a watch valued at $27,000.00 for a total of $2,091,700.00.

Renasant did not prepare either of the above financial statements and cannot comment on their accuracy.

THE DEBTOR'S BANKRUPTCY SCHEDULES:

As of the Petition Date on April 1, 2022, the principal assets of the Debtor consisted of real estate located at 648 Carriage Way, N, Atlanta, Georgia 30327 ("Carriage Way") which had a

scheduled value or $1,700,000.00 as of the Petition Date.  The Debtor further had non-exempt personal property, which according to her bankruptcy Schedules, had a value of $53,895.72 exclusive of her two Mercedes vehicles valued in the aggregate at $120,000.00 (less $15,000 of claimed exemptions) and any valuation of her ownership interest in her medical practice known as Just Breast, LLC which has a scheduled value of zero.  In the aggregate, the Debtor listed assets having a value of $1,820,595.72.

Renasant is unaware of the disposition of various of the assets owned by the Debtor from time to time and cannot comment on the downturn in value of the Debtor's financial condition from $3,484,753.00 in February 2017 to $2,091,700.00 on April 1, 2022.

VALUATION OF CARRIAGE WAY:

The Carriage Way property is the Debtor's principal residence and represents her largest asset.  By agreement with the Debtor, Renasant undertook to obtain an appraisal of the Carriage Way property from an unrelated licensed appraiser.  After inspecting the property and evaluating three comparable properties that were less than .6 miles from Carriage Way, the property was appraised as of June 24, 2022 at a value of $1,955,000.00.  A true and correct excerpt of the appraisal is attached hereto as Exhibit A.  The sale of the Carriage Way property is one of the principal components of funding the Plan.

PREPETITION OPERATIONS OF JUST BREAST, LLC:

Per the Profit Loss Statement provided by the Debtor to Renasant for the time period of calendar year 2020, Just Breast, LLC had revenue associated with the medical practice of $492,238.00 along with various forms of government funded COVID relief of $243,158.18 for total revenue of $735,396.18.  The COVID payments received by the medical practice are a non-recurring form of revenue.  Although Just Breast, LLC posted a net operating profit before taxes of $296,384.09, the actual expense versus revenue of the entity without COVID support would have yielded EBITDA of just $53,223.00.  Notably, in 2020, Just Breast, LLC paid only $8,000 to Renasant on its indebtedness which, at that time, was in default and fully accelerated.

For the time period from January 1, 2021 to June 30, 2021, the Debtor's Profit Loss Statement submitted by the Debtor to Renasant reflected similar operating results.  For the first 6 months of 2021, Just Breast, LLC had operating revenue of $250,649.00 plus additional COVID relief of $38,047.00 against pre-tax expenses of $236,268.70.  After factoring out the one time revenue item of COVID relief, the net operating profit of Just Breast, LLC for the first 6 months of 2021 was just $17,380.00.

Renasant is not in possession of any operating information related to Just Breast, LLC after June 30, 2021 and is not able to offer additional information in that regard.

PREPETITION CASH WITHDRAWALS/DEPOSITS FROM JUST BREAST, LLC BANK ACCOUNT:

Just Breast, LLC maintains its corporate bank account at Renasant.   There are multiple unexplained cash deposits and withdrawals by the Debtor to and from the operating account of Just Breast, LLC.  By way of example, in a series of 7 transactions in the 90 days preceding the Petition Date, the Debtor made cash withdrawals of $33,800.00 from the Renasant operating account.

Likewise, by way of further example, during the nine month span between November 20, 2020 and July 9, 2021, the Debtor made a total of $35,555.00 in unexplained cash deposits to an individually-owned checking account maintained with J P Morgan Chase bank, through one or more Chase-owned Automated Teller Machines (ATMs), and made a total of $59,100.00 in separate and additional cash deposits into the same account, though the latter amounts were not deposited through an ATM. The majority of the all-cash ATM deposits occurred in close chronological proximity to the Debtor's air travel. Examples:

12/22/2020 – Traveled by air to New Orleans, LA
12/29/2020 – Made 4 separate deposits through Chase ATM in Sugarland, TX totaling $9,900.00
02/11/2021 – Traveled by air to New Orleans, LA
02/16/2021 – Made 2 separate deposits through Chase ATM in Atlanta totaling $2,000.00
04/23/2021 – Traveled by air to Miami Beach, FL
04/30/2021 – Deposited $40,000.00 cash to the Chase account (non-ATM transaction)
06/01/2021 – Traveled by air to Las Vegas, NV
06/07/2021 – Made two separate cash deposits to the Chase account totaling $19,100.00
06/14/2021 – Purchased theater tickets in Powell, TN
06/15/2021 – Made two separate deposits through Chase ATM in Atlanta totaling $6,380.00
07/02/2021 – Traveled by air to Cabo San Luca, MX and lodged there 4 nights
07/08/2021 – Deposited $1,980.00 through the Chase ATM in Atlanta
07/09/2021 – Made 2 separate deposits through Chase ATM in Atlanta totaling $7,600.00

The sources of these deposits and use of funds from those withdrawals is unknown to Renasant.

POST-PETITION OPERATING REPORTS OF THE DEBTOR:

In connection with her bankruptcy case, the Debtor has filed monthly operating reports with the Court for the months ended April, May and June of 2022 ("MOR").  Those reports contain three components in terms of financial information; namely submission of the Debtor-in-Possession bank account, the Renasant operating account of Just Breast, LLC and a monthly statement from American Express for an account that appears to be used both for personal and business expenses.

Highlights from the  April MOR include the following:

- The Debtor received payroll from Just Breast, LLC in the amount of $6,882.12.

- There were charges to the American Express Account for $22,493.00 and payments of $22,290.00.

- The Debtor and one of her children traveled to Raleigh Durham by air on March 29th, just prior to the Petition Date.

- The Debtor and a companion traveled by air to Savannah on April 3rd.

- The Debtor traveled to Las Vegas and stated at the Wynn Hotel on April 8th at a cost of not less than $1,470.00. While in Las Vegas, the Debtor appears to have made a luxury purchase at Louis Vuitton in the amount of $2,324.64.

Highlights from the May MOR include the following:

- The Debtor received payroll from Just Breast, LLC in the amount of $12,783.08.

- There were charges to the American Express Account for $17,709.00 and payments of $18,162.00.

- The Debtor travelled to Dubai for a conference. On information and belief, Renasant is advised that the Debtor was invited as a speaker and presumably some of her travel was paid on her behalf. Nonetheless, the May American Express Account statement reflects Dubai related travel charges of over $2,358.00 plus what appears to be a luxury purchase of a leather bag in Dubai in the amount of $963.92. On her return trip to the United States, an overnight stay was recorded in New York City at the Trump International Hotel in the amount of $1,020.45.

Highlights from the June MOR include the following:

- The Debtor received payroll from Just Breast, LLC in the amount of $21,305.00.

- There were charges to the American Express Account for $12,421.00 and payments of $10,539.00.

PRIOR PREPETITION TRAVEL :

Although some travel made by the Debtor may be business related, her post-petition travel habits are echoed by her pre-petition travel. By way of example, the travel expenditures made by the Debtor from December 2020 to July 2021, included four trips to New Orleans, two trips to Cabo San Luca, two trips to Las Vegas, a trip to Miami, a trip to Park City, Utah and a trip to Orlando. All of these travels were made at a time when the Debtor was in substantial default with her major creditors including Ameris Bank, Renasant Bank and the Internal Revenue Service. The impact of the expense of these travels on the ability of the Debtor to pay her debts is undetermined.

POTENTIAL UNDISCLOSED CORPORATE ENTITIES:  The records of the Secretary of State for the State of Georgia along with Tax Assessor's records for Greenwood County, South Carolina indicate the following entities which are not reflected on the Debtor's Schedules:

- Costillo Co., LLC was formed with the Georgia Secretary of State on March 23, 2022, just 7 days before the Petition Date.  April Spencer, M.D.  is listed as the organizer of the company.

- SC Armory Court, LLC was formed with the Georgia Secretary of State on May 29, 2021.  As late as November 17, 2021, the Debtor represented to Renasant that she was the sole member and manager of the entity.  On information and belief, SC 107 Armory Court, LLC owns an undeveloped parcel of water frontage lake property in Ninety-Six, South Carolina which has a tax value of $60,000.00.  Per the April, May and June MORs filed with the Court, the law firm of Nelson Mullins appears to receive a retainer of $250.00 per week associated with this property from Just Breast, LLC.

STORAGE FACILITIES:  Just Breast, LLC  rents two U-Haul storage units.  Ostensibly, these units are for the storage of records related to the medical practice.  The actual purpose of these units is unknown.

INSURANCE LAPSE:  Renasant is advised that the Debtor recently allowed premiums to lapse on a collateral-assigned life insurance policy with a face value (death benefit) of $1 Million.


ARTICLE 3 – CLAIMS AGAINST THE ESTATE

The Debtor filed her bankruptcy case on April 1, 2022.  Although no bar date has been set by the Court, the creditors listed in the Debtor's schedules are few and all of them appear to have filed claims in the case as of the filing of this Disclosure Statement.  A true and correct copy of the Claims Register in this case is attached hereto as Exhibit B.  Per the Claims Register, the known claims against the estate are listed and classed as follows under the Plan:

CLASS 1- ADMINISTRATIVE CLAIMS:   Unknown as of the present and are subject to court approval upon filing of an appropriate application.

CLASS 2 – AMERIS BANK:  Ameris Bank is the holder of a fully secured claim as to Carriage Way in the amount of $1,500,059.39.  Ameris Bank is unimpaired.  As of the Petition Date, the arrearage due to Ameris Bank was over $323,415.85.  On information and belief, Renasant is advised that the Debtor is performing an interim payment agreement.

CLASS 3 – INTERNAL REVENUE SERVICE:  The Internal Revenue Service is the holder of a fully secured claim as to Carriage Way in the amount of $97,749.36.  The Internal Revenue Service is unimpaired.

CLASS 4 – FULTON COUNTY TAX COMMISSIONER:  The Fulton County Tax Commissioner is the holder of a fully secured claim as to Carriage Way in the amount of $24,654.89.  The Fulton County Tax Commissioner is fully secured.

CLASS 5 – RENASANT BANK:     Renasant Bank is the holder of an undersecured claim as to Carriage Way in the amount of $412,893.12.  Renasant Bank is impaired.  As of the Petition Date, the indebtedness due from the Debtor to Renasant Bank was further the subject of a money judgment in that same amount due to non-payment by the Debtor of a prior forbearance agreement. Following the filing of the Debtor's bankruptcy case, the Debtor negotiated an interim payment arrangement to be paid by the co-debtor, Just Breast, LLC which is currently being timely performed.  That arrangement expires on October 31, 2022.

CLASS 6 – PRIORITY CLAIMS:

6.1 – GEORGIA DEPARTMENT OF REVENUE:  The Georgia Department of Revenue is the holder of a priority claim in the amount of $22,843.97.  The claim is impaired.

6.2  -  INTERNAL REVENUE SERVICE:  The Internal Revenue Service is the holder of a priority claim in the amount of $53,891.16.  The claim is impaired.

CLASS 7 – UNSECURED CLAIMS:  Per the Claims Register, there are unsecured claims filed in the aggregate amount of $96,238.83 together with any deficiency claim which may become due to Renasant.   These claims are impaired.

ARTICLE 4 - MEANS OF FUNDING THE PLAN

CARRIAGE WAY:   The Debtor's principal residence had an appraised value of $1,995,000 as of June 24, 2022.  Renasant proposes that upon the effective date of the Plan, the Liquidating Trustee shall list the Carriage Way property for sale and after paying the customary expenses of sale along with the Debtor's statutory homestead exemption, distribute the net proceeds of sale to the holders of allowed claims pursuant to the Carve-Out Claims waterfall discussed below.

NON-EXEMPT ASSETS:  The Debtor scheduled non-exempt personal property having a value of $53,895.72, exclusive of her two Mercedes vehicles valued in the aggregate at $120,000. She places no value as to her ownership of a medical practice known as Just Breast, LLC. Renasant proposes that upon the Effective Date of the Plan, the Liquidating Trustee shall collect the non-exempt personal property of $53,895.72 along with one of the Mercedes vehicles valued by the Debtor at $60,000 and market said property for sale.  After paying the customary expenses of sale along with the Debtor's statutory exemption claims, the Liquidating Trustee shall distribute the net proceeds of sale to the holders of allowed claims pursuant to the Carve-Out Claims waterfall discussed below.

GIFTING BY RENASANT:  Out of any funds available from the sale of Carriage Way, Renasant shall gift the greater of ten percent (10%) of its distribution or $30,000.00 to pay the Carve-Out Claims.  In addition, Renasant will waive any potential deficiency claim thereby

increasing the percentage distribution to the Carve-Out Claims as it is anticipated that the deficiency claim of Renasant would be on the order of approximately $270,000.00 following the sale of Carriage Way.

THE LIQUIDATING TRUST:  Assuming payment in full of Classes 2, 3 and 4 at the closing of the sale of Carriage Way, and further assuming transactional costs of ten percent (10%), there will be an anticipated distribution of approximately $142,500.00 to Renasant.  Consequently, it is anticipated that Renasant shall contribute $30,000.00 to the Liquidating Trust.  Further, assuming that the non-exempt assets of the Debtor are liquidated at a thirty percent (30%) discount from the scheduled values,  approximately $80,000.00 additional funds will be available to the Liquidating Trust for distribution to pay allowed administrative claims and some or all of classes Classes 6 and 7 together with the distribution of any funds realized from the pursuit of any Avoidance Actions as defined herein.

DEBTOR'S RETAINED PROPERTY:  The Debtor shall retain her exempt assets, one Mercedes vehicle to be selected by the Liquidating Trustee and her membership interest in Just Breast, LLC.

ARTICLE  5 - CARVE OUT CLAIMS WATERFALL

Except as limited by section 1141(d) of the Bankruptcy Code, the Plan provides that the treatment of and consideration to be received by Holders of Allowed Claims or Debtor's Interests classified in Classes 1, 2, 3, 4, 5, 6, and 7, respectively, pursuant to this Article shall be in full and complete satisfaction, settlement, release and discharge of such Claims and Debtor's Interests. The Debtor's obligations in respect of such Claims and Debtor's Interests shall be satisfied in accordance with the terms of this Plan. Allowed claims are proposed to be paid as follows:

CLASS 1- ADMINISTRATIVE CLAIMS:   Unknown as of the present and are subject to court approval upon filing of an appropriate application. And will be paid in full.  These claims are estimated at $30,000.00.

CLASS 2 – AMERIS BANK:  Ameris Bank is the holder of a fully secured claim as to Carriage Way in the amount of $1,500,059.39.  Ameris Bank is unimpaired and will be paid in full at any closing of the sale of Carriage Way.

CLASS 3 – INTERNAL REVENUE SERVICE:  The Internal Revenue Service is the holder of a fully secured claim as to Carriage Way in the amount of $97,749.36.  The Internal Revenue Service is unimpaired and will be paid in full at any closing of the sale of Carriage Way.

CLASS 4 – FULTON COUNTY TAX COMMISSIONER:  The Fulton County Tax Commissioner is the holder of a fully secured claim as to Carriage Way in the amount of $24,654.89.  The Fulton County Tax Commissioner is fully secured and will be paid in full at any closing of the sale of Carriage Way.

CLASS 5 – RENASANT BANK:    Renasant Bank is the holder of an undersecured claim as to Carriage Way in the amount of $412,893.12.  Renasant Bank is impaired.  Upon closing, Renasant will be paid the value of its secured claim less the greater of ten percent (10%) of its distribution

or $30,000.00 to pay the Carve-Out Claims which amount shall be paid over to the Liquidating Trustee for further distribution.   Renasant shall waive any deficiency claim to which it may be entitled in Class 7, provided however, that Renasant does not waive its deficiency claim for any purposes related to voting on this Plan.

CLASS 6 – PRIORITY CLAIMS:

6.1 – GEORGIA DEPARTMENT OF REVENUE:  The Georgia Department of Revenue is the holder of a priority claim in the amount of $22,843.97.  The claim is impaired and will be paid pro-rata by the Liquidating Trustee out of available funds from the liquidation of the Debtor's non-exempt assets.

6.2  -  INTERNAL REVENUE SERVICE:  The Internal Revenue Service is the holder of a priority claim in the amount of $53,891.16.  The claim is impaired and will be paid pro-rata by the Liquidating Trustee out of available funds from the liquidation of the Debtor's non-exempt assets.

CLASS 7 – UNSECURED CLAIMS:  Per the Claims Register, there are unsecured claims filed in the aggregate amount of $96,238.83 together with any deficiency claim which may become due to Renasant.   Renasant waives any payment from Class 7, provided however, that Renasant does not waive its deficiency claim for any purposes related to voting on this Plan.  These claims are impaired. To the extent that Classes 1 through 6 are paid in full, Class 7 will be paid pro-rata by the Liquidating Trustee out of available funds from the liquidation of the Debtor's non-exempt assets and the pursuit of any Avoidance Actions.

ARTICLE 6 – LIQUIDATION ANALYSIS

Because this is a liquidating plan which proposes to distribute all of the Debtor's non-exempt assets to holders of allowed claims, no liquidation analysis is offered in this Disclosure Statement.

ARTICLE 7
INVALIDATION OF LIENS AND DISCHARGE OF CLAIMS AND INTERESTS

Confirmation of a plan will discharge the Debtor from all debts and claims, pre- and post-confirmation, and other debts and claims except as provided for in the Plan, the order confirming the Plan, or the bankruptcy code; confirmation vests all property of the Debtor's estate in the reorganized Debtor, free and clear of all liens and claims and interests of creditors and binds the Debtor, creditors, and other parties regardless of whether they have accepted the Plan.

## ARTICLE 8
## MODIFICATION OF THE PLAN

Renasant may amend or modify the Plan at any time prior to the entry of an Order Confirming the Plan without the approval of the Court.  Subsequent to the entry of the Confirmation Order, the Renasant may modify the Plan before substantial consummation of the Plan with the approval of the Court.

## ARTICLE 9
## WITHDRAWAL OF THE PLAN

Renasant reserves the right to revoke and withdraw the Plan as the plan of reorganization for the Chapter 11 case, at any time prior to the Confirmation Date if conditions set forth in the Plan cannot be satisfied for any reason after the Confirmation Date, at any time up to the Effective Date.  If Renasant revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

## ARTICLE10
## RETENTION OF JURISDICTION

Subsequent to Confirmation of the Plan, the Court will retain jurisdiction to hear and determine all Claims against the Debtor and to hear and to enforce all causes of action which exist on behalf the Debtor, including, without limitation, all turnover and avoidance causes of action granted to the Debtor and that will be owned and possibly pursued by the Debtor, post-confirmation under the Bankruptcy Code.  The Court will also retain jurisdiction to construe and apply the provisions of the Plan, including the administration and implementation of the Plan, to enter orders in aid of consummation of the Plan, to effectuate the abandonment of assets, if necessary, to issue any orders in connection with the Plan in these proceedings, to hear and decide applications for compensation and reimbursement of expenses, to resolve objections to Claims, adversary proceedings, and matters pending independently of the Plan and to close the Chapter 11 case.

Respectfully submitted this 17th day of August 2022.


                                        */s/ Eric J. Breithaupt*
                                        Eric J. Breithaupt

Stites & Harbison, PLLC               Georgia Bar Number 596142
303 Peachtree Street, N.E.          As Counsel for Renasant Bank
2800 SunTrust Plaza
Atlanta, GA 30308
Telephone:  404-739-8974
Facsimile:  404-739-8870
ebreithaupt@stites.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| APRIL LATRICE SPENCER, | |
| Debtors. | CASE NO.: 22-52524-BEM |

**<u>NOTICE OF HEARING</u>**

**PLEASE TAKE NOTICE** that Stites & Harbison, PLLC has filed its *Disclosure Statement as to Chapter 11 Liquidating Plan of Reorganization Proposed by Renasant Bank*.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a telephonic hearing on the Application at the following toll-free number 833-568-8864; meeting id 160 862 0914 on September 20, 2022 at 11:00 a.m. in U.S. Courthouse, 75 Ted Turner Drive (f/k/a Spring Street) SW, Atlanta, Courtroom 1402.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is Clerk, U. S. Bankruptcy Court, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated this 17th day of August, 2022.

_/s/ Eric J. Breithaupt_
Georgia Bar No. 596142

For the Firm of
**STITES & HARBISON, PLLC**
303 Peachtree Street, NE
2800 SunTrust Plaza
Atlanta, Georgia 30308
Telephone:  (404) 739-8800
Facsimile:  (404) 739-8870
Email: ebreithaupt@stites.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                                          CHAPTER 11

APRIL LATRICE SPENCER,

      Debtors.                          CASE NO.: 22-52524-BEM

## CERTIFICATE OF SERVICE

I, Eric J. Breithaupt, of the firm of Stites & Harbison, PLLC, 303 Peachtree Street, N.E., 2800 SunTrust Plaza, Atlanta, GA 30308, certify:

That I am, and at all times hereinafter mentioned, was more than 18 years of age;

That on the 17th day of August, 2022, the following parties in the above-styled case were served a copy of the *Disclosure Statement as to Chapter 11 Liquidating Plan of Reorganization proposed by Renasant Bank and Notice of Hearing* this date either by electronic means of the Court or via First Class U.S. Mail:

April Latrice Spencer
648 Carriage Way
Atlanta, Georgia 30327

The Rothbloom Law Firm
Attn: Howard D. Rothbloom
309 E. Paces Ferry Road, Suite 400
Atlanta, Georgia 30305

Vanessa A. Leo
Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive SW
Atlanta, Georgia 30303

Navient
P.O. Box 9533
Wilkes barre, PA 18773

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

U.S. Small Business Administration
2 North Street, Suite 320
Birmingham, AL 35203

Amin, Turocy & Watson
200 Park Avenue, Suite 300
Beachwood, OH 44122

Wells Fargo Bank, N.A.
P.O. Box 10438, MACF8235-02F
Des Moines, IA 50306

716024:1:ATLANTA

Capital One Bank
P.O. Box 85064
Richmond, VA 23285

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
AND CORRECT.

Done this  August 17th, 2022.

*/s/ Eric J. Breithaupt* _____
Georgia Bar No. 596142

# EXHIBIT "A"

File No.  220616



**SUMMARY APPRAISAL REPORT**

OF THE REAL PROPERTY LOCATED AT

648 Carriage Way NW
Atlanta, GA  30327

for

Renasant Bank
209 Troy Street
Tupelo,  MS 38804

as of

06/24/2022

by

Gordon Ray Teel Jr
1180 NIX RD
ALPHARETTA, GA 30004

TEEL APPRAISALS & ADVISORY, INC.

Appraisal Report

# Uniform Residential Appraisal Report

File # 220616

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 648 Carriage Way NW | City Atlanta    State GA    Zip Code 30327 |
| Borrower Just Breast, LLC    Owner of Public Record April Speed | County Fulton |
| Legal Description LL 160, 17th Dist., Fulton Cty, Lot 5, Carriage Way, Plat bk. 88, Pg. 31 | |
| Assessor's Parcel # 17 0160 0004 005 5 | Tax Year 2021    R.E. Taxes $ 24,167 |
| Neighborhood Name Carriage Way | Map Reference 496 G-10    Census Tract 98.02 |

Occupant [X] Owner [ ] Tenant [ ] Vacant    Special Assessments $ 0    [ ] PUD    HOA $ 0    [ ] per year [ ] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) To provide an opinion of market value.
Lender/Client Renasant Bank    Address 209 Troy Street, Tupelo, MS 38804
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
Report data source(s) used, offering price(s), and date(s). No evidence of a current listing or pending sale has been found in FMLS
or GAMLS and no one has made the appraiser aware of any pending change in ownership of the subject.

**CONTRACT**

I [ ] did [ ] did not analyze the contract for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record? [ ] Yes [ ] No    Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid:

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | PRICE | AGE | One-Unit | 85 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | $(000) | (yrs) | 2-4 Unit | 0 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 1,045 Low | | Multi-Family | 0 % |
| Neighborhood Boundaries Crest Valley Dr to the North, Powers Ferry Rd to the East, | | | | 2,100 High | 60 | Commercial | 5 % |
| Nancy Creek to the South and Randall Mill/Garmon Rd to the West. | | | | 1,482 Pred. | 56 | Other | 10 % |

Neighborhood Description The subject neighborhood is an established neighborhood of homogeneous single family detached homes of average quality which
generally appear well maintained. Employment centers are easily accessible and commute times during peak traffic periods are considered reasonable. Schools,
parks and shopping are all close by. 10% other land use refers to the vacant or undeveloped land.

Market Conditions (including support for the above conclusions) Market conditions at the time of the appraisal are average. Interest
rates are generally still attractive. These conditions are advantageous to buyers and sellers. See MC Page for further
details.

**SITE**

Dimensions Irregular-See Site Map    Area 1.01 ac    Shape Irregular    View N;Res;
Specific Zoning Classification R2    Zoning Description Single Family Residential
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe
Residential use is the only legal permissible use and this is unlikely to change in the future, therefore the present use is the only highest and best.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No    FEMA Flood Zone Zone X    FEMA Map No. 13121C0231F    FEMA Map Date 09/18/2013
Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No. If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [ ] Concrete Slab [ ] Crawl Space | | Foundation Walls Concrete Blk/Gd | | Floors Hdwd.Tile/Gd | |
| # of Stories 2 | | [X] Full Basement [ ] Partial Basement | | Exterior Walls Brick-4-Sides/Gd | | Walls Drywall/Good | |
| Type [X] Det. [ ] Att. [ ] S-Det/End Unit | | Basement Area 2,893 sq. ft. | | Roof Surface CompShingle/Gd | | Trim/Finish Wood/Good | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 81 % | | Gutters & Downspouts Aluminum/Gd | | Bath Floor Tile/Good | |
| Design (Style) Regency | | [X] Outside Entry/Exit [ ] Sump Pump | | Window Type D/H/Gd | | Bath Wainscot Tile/Good | |
| Year Built 1968 | | Evidence of [ ] Infestation | | Storm Sash/Insulated None | | Car Storage None | |
| Effective Age (Yrs) 15 | | [ ] Dampness [ ] Settlement | | Screens None | | [X] Driveway # of Cars 2 | |
| Attic [ ] | | Heating [X] FWA [ ] HWBB [ ] Radiant | | Amenities | | Driveway Surface Concrete | |
| [X] Drop Stair [ ] Stairs | | [ ] Other Fuel Gas | | [X] Fireplace(s) # 3 [ ] Fence Metal | | [ ] Garage # of Cars 0 | |
| [ ] Floor [ ] Scuttle | | Cooling [X] Central Air Conditioning | | [ ] Patio/Deck None [ ] Porch Front | | [ ] Carport # of Cars 0 | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [ ] Pool None | | [ ] Att. [ ] Det. [ ] Built-in | |
| Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [ ] Microwave [P] Washer/Dryer [ ] Other (describe) | | | | | | | |

Finished area above grade contains:    10 Rooms    5 Bedrooms    3.1 Bath(s)    4,223 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.) None Noted
Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.) C3;Kitchen-updated-six to ten
years ago;Bathrooms-updated-six to ten years ago;The subject is in good condition overall. No deficiencies were noted
and no repairs are required at this time. No external depreciation was noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe
"A head and shoulders inspection of the attic was made and no signs of infestation were noted during the inspection."

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe
In conformance with FNMA's requirement, the appraiser has followed ANSI Z765-2021 American National Standards Institute requirement to determine GLA and non GLA areas of the
subject. Please note that appraiser does not follow this requirement to determine GLA and therefore, the appraiser's GLA and public records may or may not differ.

Freddie Mac Form 70 March 2005    UAD Version 9/2011    Page 1 of 6    Fannie Mae Form 1004 March 2005

TEEL APPRAISALS & ADVISORY, INC.

## Uniform Residential Appraisal Report
File # 220616

| | | |
|---|---|---|
| There are | 2 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 1,351,500 to $ 1,905,000 |
| There are | 8 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,045,000 to $ 2,100,000 |

| FEATURE | SUBJECT | COMPARABLE SALE #1 | | COMPARABLE SALE #2 | | COMPARABLE SALE #3 | |
|---|---|---|---|---|---|---|---|
| Address | 648 Carriage Way NW, Atlanta, GA 30327 | 361 Blanton Rd. NW, Atlanta, GA 30342 | | 4363 Paran Place NW, Atlanta, GA 30327 | | 459 Blanton Rd., Atlanta, GA 30327 | |
| Proximity to Subject | | 0.60 miles E | | 0.55 miles NW | | 0.42 miles NE | |
| Sale Price | $ | $ 2,100,000 | | $ 2,038,000 | | $ 1,415,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft | $ 469.17 sq.ft | | $ 565.33 sq.ft | | $ 357.68 sq.ft | |
| Data Source(s) | | FMLS#7017777, Complio/DOM 4 | | FMLS#6882853, Complio/DOM 33 | | FMLS#7016453, Complio/DOM 10 | |
| Verification Source(s) | | gsccca.org | | gsccca.org | | gsccca.org | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing Concessions | | ArmLth Cash;135 | | ArmLth Conv;0 | | ArmLth Conv;0 | |
| Date of Sale/Time | | s04/22;c03/22 | | s08/21;c07/21 | | s05/22;c03/22 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 1.01 ac | 34692 sf | 0 | 36666 sf | 0 | 24150 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT2;Regency | DT2;Regency | | DT2;Modern | 0 | DT2;Regency | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 54 | 53 | 0 | 56 | 0 | 58 | 0 |
| Condition | C3 | C3 | | C3 | | C4 | +50,000 |
| Above Grade Room Count | Total 10 / Bdrms. 5 / Baths 3.1 | Total 11 / Bdrms. 4 / Baths 3.1 | 0 | Total 10 / Bdrms. 3 / Baths 3.0 | +3,500 | Total 9 / Bdrms. 5 / Baths 3.1 | 0 |
| Gross Living Area | 4,223 sq.ft | 4,476 sq.ft | -7,590 | 3,605 sq.ft | +18,540 | 3,956 sq.ft | +8,010 |
| Basement & Finished Rooms Below Grade | 2893sf2340sfwo | 1395sf698sfwo | +11,984 | 960sf960sfwo | +15,464 | 1620sf1039sfwo | +10,184 |
| | 5rr1br1.0ba1o | 1rr1br1.0ba1o | +29,556 | 1rr1br1.0ba0o | +24,840 | 1rr0br1.0ba1o | +23,418 |
| Functional Utility | Good | Good | | Good | | Good | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 3ga3dw | -10,000 |
| Porch/Patio/Deck | Frt Porch | Cvrfrpch/Deck | -5,000 | Patio | +10,000 | Cvrfrpch/Patio | -5,000 |
| Kitchen | Deluxe Kitchen | Deluxe Kitchen | | Deluxe Kitchen | | Standard BI's | +7,500 |
| Fireplaces | 3 Fireplaces | 2 Fireplaces | +2,000 | 2 Fireplaces | +2,000 | 2 Fireplaces | +2,000 |
| Site Improvmnts | None | None | | Pool | -50,000 | None | |
| Net Adjustment (Total) | | X + - $ 30,950 | | X + - $ 24,344 | | X + - $ 86,112 | |
| Adjusted Sale Price of Comparables | | Net Adj. 1.47 % Gross Adj. 2.67 % $ 2,130,950 | | Net Adj. 1.19 % Gross Adj. 6.10 % $ 2,062,344 | | Net Adj. 6.09 % Gross Adj. 8.21 % $ 1,501,112 | |

I  [X] did  did not research the sale or transfer history of the subject property and comparable sales.  If not, explain

My research  [ ] did  [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)  GSCCCA.org (Fulton Superior Court Clerk)

My research  [ ] did  [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)  GSCCCA.org (Fulton Superior Court Clerk)

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | gsccca.org | gsccca.org | gsccca.org | gsccca.org |
| Effective Date of Data Source(s) | 06/03/2022 | 06/03/2022 | 06/03/2022 | 06/03/2022 |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject is not currently under contract and a search of local multiple listing records indicate the subject has not sold within the last 36 months prior to the appraisal date, and that the comparable properties have not sold within the last 12 months prior to the sale date of the comparable unless otherwise denoted below the comparable.

Summary of Sales Comparison Approach   The comparable properties analyzed here are recent closed sales located in the subject market area. They are the most similar and most recent sales available. All comparable sales are considered good indicators of value for the subject property. The adjustments made to the sales represent the appraiser's attempt to isolate and compensate for significantly dissimilar features or conditions. Adjustment rates were derived through broader market paired sales analysis along with market reaction and acceptance of specialty features. All comparable sales are within 1.0 miles of the subject and all are located within the subject market area. As lots are not sold by the square foot, no lot adjustments are warranted. Most weight(50%) is given to sale #1 for having the lowest level of adjustment. Equal secondary weight(25% each) is given to the other sales.

Indicated Value by Sales Comparison Approach $ 1,955,000

Indicated Value by:  Sales Comparison Approach $ 1,955,000   Cost Approach (if developed) $ 0   Income Approach (if developed) $ 0

The market approach was given full weight in the final value estimate. The market area lacks sufficient data to attempt a credible income approach and was not attempted. The cost approach is considered check of reasonableness for the market approach only for new construction and is not attempted.

This appraisal is made  [X] "as is",  [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or  [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 1,955,000 , as of  06/24/2022 , which is the date of inspection and the effective date of this appraisal.

TEEL APPRAISALS & ADVISORY, INC.

# EXHIBIT "B"

# Northern District of Georgia
# Claims Register

### 22-52524-bem April Latrice Spencer

| | |
|---|---|
| **Judge:** Barbara Ellis-Monro | **Chapter:** 11 |
| **Office:** Atlanta | **Last Date to file claims:** |
| **Trustee:** | **Last Date to file (Govt):** |

Creditor:         (23804085)          **Claim No: 1**                    *Status:*
US Department of Education            *Original Filed Date*: 04/04/2022    *Filed by:* CR
P O Box 16448                        *Original Entered Date*: 04/04/2022  *Entered by:* Educational Credit Management Corp.
Saint Paul MN 55116-0448                                                  *Modified:*

   Amount claimed: $6494.33

*History:*

Details 🌐   1-1   04/04/2022 Claim #1 filed by US Department of Education, Amount claimed: $6494.33 (Educational Credit Management Corp.)

*Description:* (1-1) April Speed-Spencer xxx-xx-5653

*Remarks:*


Creditor:         (23801899)          **Claim No: 2**                    *Status:*
Georgia Department of Revenue        *Original Filed Date*: 04/06/2022    *Filed by:* CR
Compliance Division, ARCS - Bankruptrcy  *Original Entered Date*: 04/06/2022  *Entered by:* Rosulala L Hamilton
1800 Century Blvd, NE, #9100                                              *Modified:*
Atlanta, GA 30345

   Amount claimed: $23286.28

   Priority  claimed: $22843.97

*History:*

Details 🌐   2-1   04/06/2022 Claim #2 filed by Georgia Department of Revenue, Amount claimed: $23286.28 (Hamilton, Rosulala)

*Description:*

*Remarks:*


Creditor:         (23809346)          **Claim No: 3**                    *Status:*
Navient Solutions, LLC.              *Original Filed Date*: 04/08/2022    *Filed by:* CR
220 Lasley Ave                       *Original Entered Date*: 04/08/2022  *Entered by:* Ann Marie Theresa Wincek
Wilkes-Barre, PA 18706                                                   *Modified:*

Amount claimed: $79521.36

*History:*

Details ⊙    3-1    04/08/2022 Claim #3 filed by Navient Solutions, LLC., Amount claimed: $79521.36 (Wincek, Ann Marie)

*Description:*

*Remarks:*

| | |
|---|---|
| *Creditor:*    (23801900) | **Claim No: 4** |
| Internal Revenue Service | *Original Filed Date*: 04/08/2022 |
| P.O. Box 7346 | *Original Entered Date*: 04/08/2022 |
| Philadelphia, PA 19101-7346 | *Last Amendment Filed*: 05/19/2022 |

*Status:*
*Filed by:* CR
*Entered by:* Internal Revenue Service
*Modified:*

*Last Amendment
Entered:* 05/19/2022

Amount  claimed: $192221.04
Secured claimed:  $97749.36
Priority  claimed:  $53891.16

*History:*

Details ⊙    4-1    04/08/2022 Claim #4 filed by Internal Revenue Service, Amount claimed: $187717.04 (Internal Revenue Service)
Details ⊙    4-2    04/11/2022 Amended Claim #4 filed by Internal Revenue Service, Amount claimed: $415577.53 (Internal Revenue Service)
Details ⊙    4-3    04/21/2022 Amended Claim #4 filed by Internal Revenue Service, Amount claimed: $192121.04 (Internal Revenue Service)
Details ⊙    4-4    05/19/2022 Amended Claim #4 filed by Internal Revenue Service, Amount claimed: $192221.04 (Internal Revenue Service)

*Description:*

*Remarks:*

| | |
|---|---|
| *Creditor:*    (23822885) | **Claim No: 5** |
| Renasant Bank | *Original Filed Date*: 04/21/2022 |
| c/o Stites & Harbison, PLLC | *Original Entered Date*: 04/21/2022 |
| Attn: Eric J. Breithaupt | |
| 303 Peachtree Street, Suite 2800 | |
| Atlanta Georgia 30308 | |

*Status:*
*Filed by:* CR
*Entered by:* Eric J. Breithaupt
*Modified:*

Amount  claimed: $412893.12
Secured claimed: $412893.12

*History:*

Details ⊙    5-1    04/21/2022 Claim #5 filed by Renasant Bank, Amount claimed: $412893.12 (Breithaupt, Eric)

*Description:* (5-1) Money Loaned/Judgment

*Remarks:* (5-1) Money Loaned/Judgment

| | | |
|---|---|---|
| *Creditor:* (23835814)<br>Wells Fargo Bank, N.A.<br>Wells Fargo Card Services<br>PO Box 10438, MAC F8235-02F<br>Des Moines, IA 50306-0438 | **Claim No: 6**<br>*Original Filed Date*: 05/03/2022<br>*Original Entered Date*: 05/03/2022 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Wambold, Katherine - Wells Fargo Card Services<br>*Modified:* |

  Amount claimed: $9780.83

*History:*

Details 🌐   6-1   05/03/2022 Claim #6 filed by Wells Fargo Bank, N.A., Amount claimed: $9780.83 (Wambold, Katherine - Wells Fargo Card Services)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* (23801897)<br>Fulton County Tax Commissioner<br>141 Pryor Street<br>Atlanta, GA 30303-0000 | **Claim No: 7**<br>*Original Filed Date*: 05/05/2022<br>*Original Entered Date*: 05/05/2022 | *Status:*<br>*Filed by:* CR<br>*Entered by:* ePOC<br>*Modified:* |

  Amount  claimed: $24654.89

  Secured claimed: $24654.89

*History:*

Details 🌐   7-1   05/05/2022 Claim #7 filed by Fulton County Tax Commissioner, Amount claimed: $24654.89 (ePOC)

*Description:*

*Remarks:* (7-1) Account Number (last 4 digits):0555

| | | |
|---|---|---|
| *Creditor:* (23872627)<br>Ameris Bank<br>C/O Ameris Bank<br>1 Corporate Drive, Ste 360<br>Lake Zurich, IL 60047 | **Claim No: 8**<br>*Original Filed Date*: 06/09/2022<br>*Original Entered Date*: 06/09/2022 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Lisa F. Caplan<br>*Modified:* |

  Amount  claimed: $1530059.39

  Secured claimed: $1530059.39

*History:*

Details 🌐   8-1   06/09/2022 Claim #8 filed by Ameris Bank, Amount claimed: $1530059.39 (Caplan, Lisa)

*Description:* (8-1) Loan number 1484

*Remarks:* (8-1) Arrearage $323,415.85

# Claims Register Summary

**Case Name:** April Latrice Spencer
**Case Number:** 22-52524-bem
**Chapter:** 11
**Date Filed:** 04/01/2022
**Total Number Of Claims:** 8

| | |
|---|---|
| **Total Amount Claimed*** | $2278911.24 |
| **Total Amount Allowed*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $2065356.76 | |
| **Priority** | $76735.13 | |
| **Administrative** | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/16/2022 16:33:29 | | | |
| **PACER Login:** | Breithaupt | **Client Code:** | Renasant v. April Spencer |
| **Description:** | Claims Register | **Search Criteria:** | 22-52524-bem Filed or Entered From: 1/1/1900 Filed or Entered To: 8/16/2022 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |