UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| APRIL LATRICE SPENCER, | CASE NO.: 22-52524-BEM |
| Debtors. | |

## CHAPTER 11 LIQUIDATING PLAN OF REORGANIZATION PROPOSED BY RENASANT BANK

Renasant Bank ("Renasant"), by and through its undersigned counsel, hereby proposes the following chapter 11 plan of liquidation (the "**Plan**") for April Latrice Spencer ("**Debtor**") pursuant to sections §§1121(e) and 1126(f) of Title 11 of the United States Code (the "**Bankruptcy Code**").  Renasant is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.  Subject to certain restrictions set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019 and this Plan, Renasant reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE 1 - PLAN SUMMARY

As set forth more fully below, this Plan contemplates the sale of substantially all the Debtor's non-exempt assets  by way of a Liquidating Trust (the "Sale").  As of the Petition Date on April 1, 2022, the principal assets of the Debtor consisted of real estate located at 648 Carriage Way, N, Atlanta, Georgia 30327 ("Carriage Way") which had an appraised value of $1,995,000 as of June 24, 2022.  The Debtor further had non-exempt personal property, which according to her bankruptcy Schedules, had a value of $53,895.72 exclusive of her two Mercedes vehicles valued in the aggregate at $120,000.00 (less $15,000 of claimed exemptions) and any valuation of her ownership interest in a medical practice known as Just Breast, LLC.  Renasant is the holder of a third position undersecured claim against Carriage Way in the amount of $412,893.12, less payments received from Just Breast, LLC since the bankruptcy Petition Date.  The other scheduled and/or filed claims against the bankrupt estate are the claim of Ameris Bank in the amount of $1,530,059.39, less any post-petition payments, which is secured by a first position lien on Carriage Way, secured tax claims totaling $122,404.25, priority tax claims of $76,735.13 and unsecured claims of $96,238.83 (collectively the priority and unsecured claims are designated as the  "Carve-Out Claims").  Renasant proposes to pay all or a part of the Carve-Out Claims by way of "gifting" a portion of its proceeds of sale of Carriage Way and waiving any deficiency claim it may have as an unsecured creditor.  In the absence of these voluntary concessions by Renasant, such funds would not be available for distribution to pay some or all of the Carve-Out Claims.

## ARTICLE 2 - CLAIMS AGAINST THE ESTATE

The Debtor filed her bankruptcy case on April 1, 2022.  Although no bar date has been set by the Court, the creditors listed in the Debtor's schedules are few and all of them appear to have filed claims in the case as of the filing of this liquidating Plan.  Per the Claims Register, the known claims against the estate are listed and classed as follows:

CLASS 1- ADMINISTRATIVE CLAIMS:   Unknown as of the present and are subject to court approval upon filing of an appropriate application.

CLASS 2 – AMERIS BANK:  Ameris Bank is the holder of a fully secured claim as to Carriage Way in the amount of $1,500,059.39.  Ameris Bank is unimpaired.

CLASS 3 – INTERNAL REVENUE SERVICE:  The Internal Revenue Service is the holder of a fully secured claim as to Carriage Way in the amount of $97,749.36.  The Internal Revenue Service is unimpaired.

CLASS 4 – FULTON COUNTY TAX COMMISSIONER:  The Fulton County Tax Commissioner is the holder of a fully secured claim as to Carriage Way in the amount of $24,654.89.  The Fulton County Tax Commissioner is fully secured.

CLASS 5 – RENASANT BANK:     Renasant Bank is the holder of an undersecured claim as to Carriage Way in the amount of $412,893.12.  Renasant Bank is impaired.

CLASS 6 – PRIORITY CLAIMS:

6.1 – GEORGIA DEPARTMENT OF REVENUE:  The Georgia Department of Revenue is the holder of a priority claim in the amount of $22,843.97.  The claim is impaired.

6.2  -  INTERNAL REVENUE SERVICE:  The Internal Revenue Service is the holder of a priority claim in the amount of $53,891.16.  The claim is impaired.

CLASS 7 – UNSECURED CLAIMS:  Per the Claims Register, there are unsecured claims filed in the aggregate amount of $96,238.83 together with any deficiency claim which may become due to Renasant.   These claims are impaired.

## ARTICLE 3 - MEANS OF FUNDING THE PLAN

3.1 CARRIAGE WAY:  The Debtor's principal residence had an appraised value of $1,995,000 as of June 24, 2022.  Renasant proposes that upon the effective date of the Plan, the Liquidating Trustee shall list the Carriage Way property for sale and after paying the customary expenses of sale along with the Debtor's statutory homestead exemption, distribute the net proceeds of sale to the holders of allowed claims pursuant to the Carve-Out Claims waterfall discussed below.

2

3.2  NON-EXEMPT ASSETS:  The Debtor scheduled non-exempt personal property having a value of $53,895.72, exclusive of her two Mercedes vehicles valued in the aggregate at $120,000.  She places no value as to her ownership of a medical practice known as Just Breast, LLC.  Renasant proposes that upon the Effective Date of the Plan, the Liquidating Trustee shall collect the non-exempt personal property of $53,895.72 along with one of the Mercedes vehicles valued by the Debtor at $60,000 and market said property for sale.  After paying the customary expenses of sale along with the Debtor's statutory exemption claims, the Liquidating Trustee shall distribute the net proceeds of sale to the holders of allowed claims pursuant to the Carve-Out Claims waterfall discussed below.

3.3  GIFTING BY RENASANT:  Out of any funds available from the sale of Carriage Way, Renasant shall gift the greater of ten percent (10%) of its distribution or $30,000.00 to pay the Carve-Out Claims.  In addition, Renasant will waive any potential deficiency claim thereby increasing the percentage distribution to the Carve-Out Claims as it is anticipated that the deficiency claim of Renasant would be on the order of approximately $270,000.00 following the sale of Carriage Way.

3.4  THE LIQUIDATING TRUST:  Assuming payment in full of Classes 2, 3 and 4 at the closing of the sale of Carriage Way, and further assuming transactional costs of ten percent (10%), there will be an anticipated distribution of approximately $142,500.00 to Renasant.  Consequently, it is anticipated that Renasant shall contribute $30,000.00 to the Liquidating Trust.  Further, assuming that the non-exempt assets of the Debtor are liquidated at a thirty percent (30%) discount from the scheduled values,  approximately $80,000.00 additional funds will be available to the Liquidating Trust for distribution to pay allowed administrative claims and some or all of classes Classes 6 and 7 together with the distribution of any funds realized from the pursuit of any Avoidance Actions as defined herein.

3.5  DEBTOR'S RETAINED PROPERTY:  The Debtor shall retain her exempt assets, one Mercedes vehicle to be selected by the Liquidating Trustee and her membership interest in Just Breast, LLC.

## ARTICLE  4 - CARVE OUT CLAIMS WATERFALL

4.1  Except as limited by section 1141(d) of the Bankruptcy Code, the treatment of and consideration to be received by Holders of Allowed Claims or Debtor's Interests classified in Classes 1, 2, 3, 4, 5, 6, and 7, respectively, pursuant to this Article shall be in full and complete satisfaction, settlement, release and discharge of such Claims and Debtor's Interests.  The Debtor's obligations in respect of such Claims and Debtor's Interests shall be satisfied in accordance with the terms of this Plan. Allowed claims will be paid as follows:

CLASS 1- ADMINISTRATIVE CLAIMS:   Unknown as of the present and are subject to court approval upon filing of an appropriate application. And will be paid in full.  These claims are estimated at $30,000.00.

CLASS 2 – AMERIS BANK:  Ameris Bank is the holder of a fully secured claim as to Carriage Way in the amount of $1,500,059.39.  Ameris Bank is unimpaired and will be paid in full at any closing of the sale of Carriage Way.

CLASS 3 – INTERNAL REVENUE SERVICE:  The Internal Revenue Service is the holder of a fully secured claim as to Carriage Way in the amount of $97,749.36.  The Internal Revenue Service is unimpaired and will be paid in full at any closing of the sale of Carriage Way.

CLASS 4 – FULTON COUNTY TAX COMMISSIONER:  The Fulton County Tax Commissioner is the holder of a fully secured claim as to Carriage Way in the amount of $24,654.89.  The Fulton County Tax Commissioner is fully secured and will be paid in full at any closing of the sale of Carriage Way.

CLASS 5 – RENASANT BANK:    Renasant Bank is the holder of an undersecured claim as to Carriage Way in the amount of $412,893.12.  Renasant Bank is impaired.  Upon closing, Renasant will be paid the value of its secured claim less the greater of ten percent (10%) of its distribution or $30,000.00 to pay the Carve-Out Claims which amount shall be paid over to the Liquidating Trustee for further distribution.   Renasant shall waive any deficiency claim to which it may be entitled in Class 7, provided however, that Renasant does not waive its deficiency claim for any purposes related to voting on this Plan.

CLASS 6 – PRIORITY CLAIMS:

6.1 – GEORGIA DEPARTMENT OF REVENUE:  The Georgia Department of Revenue is the holder of a priority claim in the amount of $22,843.97.  The claim is impaired and will be paid pro-rata by the Liquidating Trustee out of available funds from the liquidation of the Debtor's non-exempt assets.

6.2 -  INTERNAL REVENUE SERVICE:  The Internal Revenue Service is the holder of a priority claim in the amount of $53,891.16.  The claim is impaired and will be paid pro-rata by the Liquidating Trustee out of available funds from the liquidation of the Debtor's non-exempt assets.

CLASS 7 – UNSECURED CLAIMS:  Per the Claims Register, there are unsecured claims filed in the aggregate amount of $96,238.83 together with any deficiency claim which may become due to Renasant.  Renasant waives any payment from Class 7, provided however, that Renasant does not waive its deficiency claim for any purposes related to voting on this Plan.  These claims are impaired. To the extent that Classes 1 through 6 are paid in full, Class 7 will be paid pro-rata by the Liquidating Trustee out of available funds from the liquidation of the Debtor's non-exempt assets.

## ARTICLE 5 – DEFINITIONS

5.1 Definitions.  As used in this Plan, the following terms shall have the respective meanings specified below:

"**Administrative Claim**" means a Claim incurred by a Debtor on or after the Petition Date and before the Effective Date for costs or expenses of administration of the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of operating the businesses of the Debtor or preserving the Estate, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 330, 331, or 503 of the Bankruptcy Code

"**Administrative Claims Bar Date**" shall have the meaning set forth in Article 6 of this Plan.

"**Affiliate**" means with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code as if such Person was a debtor in a case under the Bankruptcy Code.

"**Allowed,**" when used in the context of a Claim, means: (a) any Claim or Administrative Claim, proof or request for payment, as the case may be, of which was Filed with the Bankruptcy Court on or before the applicable Bar Date or Administrative Claims Bar Date (as applicable), or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent for which no contrary or superseding proof of claim has been Filed, and which, in either case, is a Claim or Administrative Claim as to which no objection to the allowance thereof has been Filed within the applicable period of limitation (if any) for objection to Claims or Administrative Claims set forth in this Plan or as otherwise fixed by the Bankruptcy Court, or as to which any objection has been determined by a Final Order (to the extent such claim is allowed in whole or in part), or (b) a Claim or Administrative Claim that is allowed (i) in a Final Order or (ii) pursuant to the terms of this Plan.

"**Avoidance Actions**" means Causes of Action arising under sections 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code that remain assets of the Estates following the Sale. Because the Plan Proponent is not in possession of the Estate, evaluation of these claims is reserved to the Liquidating Trustee for further identification and prosecution.

"**Ballot**" means the form distributed to each holder of an impaired Claim entitled to vote on the Plan, on which is to be indicated, among other things, acceptance or rejection of the Plan.

"**Ballot Date**" means the date established by the Bankruptcy Court and set forth in the Disclosure Statement Order for the submission of Ballots pursuant to the terms and provisions of the Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended to the extent such amendment is applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Georgia or such other court having jurisdiction over this Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and the  local rules of the Bankruptcy Court, as now in effect or hereafter amended to the extent such amendment is applicable to the Chapter 11 Cases.

"**Bar Date**" means: (i) such dates set forth in this Plan or (ii) otherwise designated by the Bankruptcy Court as the last dates for filing proofs of Claim (but not Administrative Claims and Fee Claims for which the Administrative Claims Bar Date and Fee Claims Bar Date shall apply), as the case may be, against the Debtor.

"**Business Day**" means any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006(a).

"**Cash**" means cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

"**Causes of Action**" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown and whether asserted or unasserted, including Avoidance Actions and actions to recover undisclosed assets from the Debtor.  Because the Plan Proponent is not in possession of the Estate, evaluation of these claims is reserved to the Liquidating Trustee for further identification and prosecution.

"**Claim**" means a claim as defined in section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" shall mean the date 90 days after the Effective Date of this Plan.

"**Class**" means each category of Holders of Claims or Debtor's Interests.

"**Confirmation Date**" means the date of entry of the Confirmation Order on the docket of the Bankruptcy Court.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of this Plan.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the same may thereafter be modified by the Bankruptcy Court entered in each of the Chapter 11 Cases.

"**Creditor**" means a Holder of Claim(s) against the Debtor including, without limitation, a Claim that arose on or before the Petition Date or a Claim against the Estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

"**Debtor**" shall mean Dr. April Latrice Spencer, aka April L. Speed.

"**Debtor's Interests**" means any share of the membership interests or equity security (as defined in Bankruptcy Code section 101(16)) of the Debtor outstanding on the Effective Date, including, inter alia, any rights of any Person or Entity to purchase or demand the issuance of any membership interest or economic interest related thereto, or any of them.

6

"**Disbursing Agent**" means the Liquidating Trustee.

"**Disputed Claim**" means any Claim or Administrative Claim (i) as to which a timely objection or request for estimation in accordance with the Bankruptcy Code and Bankruptcy Rules, or otherwise disputed in accordance with applicable law, has been interposed and (ii) that has not been withdrawn or determined by a Final Order.

"**Disputed Claims Reserve**" means a reserve, if any, of Cash for the relevant Class, established pursuant to this Plan for the payment or other satisfaction of Disputed Claims that become, in whole or part, Allowed Claims after the Effective Date.

"**Distribution(s)**" means the distribution of Cash or other Property to be made in accordance with this Plan.

"**Distribution Date**" means, with respect to any Allowed Claim, any date upon which a Distribution is made in accordance with this Plan, including dates of both interim and final Distributions.

"**Effective Date**" means the Business Day this Plan becomes effective which shall be fifteen (15) days after the entry of a final, non-appealed Confirmation Order by the Court.

"**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

"**Estate**" means the estate of the Debtor created in this chapter 11 case pursuant to section 541 of the Bankruptcy Code.

"**Executory Contract**" means any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person or Entity.

"**Fee Application**" means any application of any Professional in which a Fee Claim is asserted.

"**Fee Claim**" means a claim under sections 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

"**Fee Claim Bar Date**" has the meaning set forth in Section 2.6 of the Plan.

"**File**", "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court.

"**Final Order**" means an order entered by the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, reargument or rehearing has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied, and the time to take any further appeal,

7

petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"**General Unsecured Claims**" means any Claim against the Debtor that is unsecured, other than Priority Claims.

"**Holder**" means a Person or Entity holding a Claim or Debtor's Interest.

"**Impaired**" shall have the meaning set forth in section 1124 of the Bankruptcy Code.

"**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code, or a judicial lien as defined in section 101(36) of the Bankruptcy Code and includes, without limitation, mortgages, deeds of trust, security interests, conditional sale or other retention agreements, mechanic's liens, pledges, judgments, demands, easements, defects, options, liabilities, obligations, interests, levies, assessments, defenses, setoffs, recoupments, title retention contracts, encumbrances, leases, subleases, agreements, commitments, options to purchase, rights of first refusal and restrictions of all kinds.

"**Non-Exempt Property**" shall mean all assets of the Debtor which are not exempt or fully claimed exempt pursuant to applicable law and as reflected upon Schedule C of the Debtor's Schedules.

"**Liquidating Trust**" shall mean a trust created primarily for the benefit of all Creditors of the Debtor, which shall, among other things, administer and distribute the assets available on account of the Allowed Claims of Creditors under this Plan, and with respect to which, the Liquidating Trustee will act as Disbursing Agent.

"**Liquidating Trust Agreement**" means the agreement to be executed among the Liquidating Trustee, Renasant and the Debtor, establishing the Liquidating Trust, substantially in the form set forth in a Plan Supplement, pursuant to which the Liquidating Trustee shall manage and administer the Liquidating Trust and distribute the proceeds thereof.

"**Liquidating Trustee**" means the trustee of the Liquidating Trust. The Liquidating Trustee will also serve as the Disbursing Agent for making Distributions to Holders of Allowed Claims. Renasant proposes to appoint Mr. Christopher Tierney of Moore Colson as the Liquidating Trustee.

"**Periodic Distribution Amount**" means, with respect to each Periodic Distribution Date, the amount of Cash equal to the Pro Rata Share of the Property assigned to the Liquidating Trust pursuant to the Plan, to which holders of Allowed General Unsecured Claims are entitled, if any.

"**Periodic Distribution Date**" means, such Business Day selected by the Liquidating Trustee, in its sole and absolute discretion; provided, however that Distributions shall not be made more than more than thirty (30) days after the closing of any sale of the Real Estate, absent other order of Court.

"**Person**" means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

"**Petition Date**" means April 1, 2022, the date that the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code.

"**Plan**" means this document and all attachments, exhibits and schedules hereto, and any amendments or modifications hereof.

"**Plan Supplement**" means, a separate volume, to be filed with the clerk of the Bankruptcy Court, including, among other documents, a form of the Liquidating Trust Agreement.

"**Priority Claim**" means any Allowed Claim asserted against any Debtor, other than an Administrative Claim that is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

"**Professionals**" means those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with section 327 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court in a Final Order issued pursuant to section 503(b)(4) of the Bankruptcy Code, or (iii) for which compensation and reimbursement is provided pursuant to this Plan.

"**Property**" means all property and interests in property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, existing on the Effective Date.

"**Pro Rata Share**" means, as of any certain date, with respect to any Allowed Claim in any Class, or set of Classes (in whole or in part), the proportion that such Allowed Claim bears to the aggregate amount of all Allowed Claims in such Class or set of Classes (in whole or in part).

"**Real Estate**" means the real property located at 648 Carriage Way, N, Atlanta, Georgia 30327 ("Carriage Way").

"**Related Person**" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity-holders, officers, directors, employees, representatives, advisors, attorneys, agents and professionals, in each case acting in such capacity, and any Person claiming by or through any of them.

"**Released Parties**" shall mean (i) the Debtor, (ii) any Holder of the Debtor's Interests, (iii) the Liquidating Trustee, (iv) Renasant and (v) and the foregoing entity managers, members, officers, directors, principals, employees, agents, advisors, attorneys, accountants, consultants, representatives, and other professionals, in each case in their capacities as such and not in any other capacity, provided however, that the Debtor shall not be released from any avoidance action or causes of action to recover undisclosed assets identified by the Liquidating Trustee.

"**Sale**" means the sale, transfer, conveyance and assignment of all right, title and interest in and to Real Estate as defined herein, the proceeds of which shall be distributed among Holders of Claims in accordance with the terms of the Plan as provided by Section 1123 of the Bankruptcy Code.

"**Sale Order**" means a final order entered by the Bankruptcy Court in form and substance reasonably acceptable to the Purchaser  (i) approving the Sale of the Real Estate, (ii) finding that notice of the hearing concerning approval of said sale was given in accordance with the Bankruptcy Code and constitutes such notice as is appropriate under the particular circumstances and that Purchaser is a "good faith" Purchaser entitled to the protections afforded by Section 363(m) of the Bankruptcy Code, and (iii) providing for the vesting of the purchased assets in the Purchaser, free and clear of all Encumbrances, as provided in and to the maximum extent permitted by 11 U.S.C. §§ 363(b) and (f).

"**Schedules**" means the Debtor's Schedules of Assets and Liabilities filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they may be amended from time to time.

"**Secured Claim**" means all or that portion of an Allowed Claim existing on the Effective Date, to the extent that such Claim is treated under this Plan as not greater than the value of the assets of the Debtor that the Bankruptcy Court finds are valid, perfected and unavoidable security for such debt, in accordance with section 506(a) of the Bankruptcy Code and this Plan.

"**Unimpaired**" means any Claim that is not Impaired.

"**Unsecured Claim**" means any Claim that is not secured by a valid, perfected and unavoidable Lien or a Letter of Credit posted by the Debtor as account parties, as set forth in this Plan or as determined pursuant to a Final Order of the Bankruptcy Court, other than Administrative Claims and Priority Claims.

## ARTICLE 6 – PAYMENT OF ADMINISTRATIVE CLAIMS

6.1    <u>Treatment of Administrative Claims</u>.  Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, without interest, in Cash, on the sixtieth (60th) Business Day following the later of (i) the Effective Date, (ii) the closing date for the Sale, (iii) the date upon which such Administrative Claim becomes an Allowed Administrative Claim or (iv) the date upon which such Administrative Claim becomes due; provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtor may be paid at such Debtor's election in the ordinary course of business so long as any such payment is not prohibited by the Cash Collateral Orders or any other orders entered by the Bankruptcy Court in the above-captioned proceeding.

6.2    <u>Bar Date for Administrative Claims</u>.  Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, with the exception of Fee Claims, must be Filed with the Bankruptcy Court not later than sixty (60) days after the Effective Date (the "**Administrative Claims Bar Date**"). **Any Person that is required to File and serve a request for payment of an Administrative Claim and fails to timely File and serve such request, shall be forever barred, estopped and enjoined from asserting such Administrative Claim or**

**participating in Distributions under this Plan on account thereof.** Objections to an Administrative Claim must be Filed not later than one-hundred eighty (90) days after the Effective Date.

6.3     Bar Date for Filing Fee Claims. Each Professional who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application not later than sixty (60) days after the Effective Date (the "**Fee Claim Bar Date**").  **Any Person that is required to File and serve a Fee Application and fails to timely File and serve such Fee Application, shall be forever barred, estopped and enjoined from asserting such Fee Claim or participating in Distributions under this Plan on account thereof.**  Objections to a Fee Claim must be Filed and served on the Debtor, the Liquidating Trustee, and the requesting party and their respective counsel, if any, not later than ninety (90) days after the Effective Date.

6.4     Allowance of Administrative Claims/Fee Claims. An Administrative Claim with respect to which request for payment has been properly filed and served pursuant to Section 2.03 hereof shall, to the extent not otherwise deemed Allowed by Final Order of the Bankruptcy Court prior to such date, become an Allowed Administrative Claim without notice or a hearing if no objection is filed within: (i) ninety (90) days after the Effective Date for all Administrative Claims, (ii) ninety (90) days after the Effective Date for all Fee Claims, or (iii) such later date as may be approved by the Bankruptcy Court on motion of a party in interest.  If no objection is filed within the applicable time period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.  A Fee Claim in respect of which a Fee Application has been properly filed and served shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

## ARTICLE 7 - ACCEPTANCE OR REJECTION OF THE PLAN

7.1     Presumed Acceptance by Unimpaired Classes. Holders of  Claims in Classes 2, 3 and 4 are Unimpaired by the Plan.  Under Bankruptcy Code section 1126(f), Holders of such Claims are conclusively presumed to accept the Plan, and the votes of such Holders will not be solicited.

7.2     Impaired Classes of Claims Entitled to Vote.  Holders of Claims in Classes 5, 6 and 7 are Impaired and are entitled to vote to accept or reject the Plan.

7.3     Acceptance by an Impaired Class.  In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if it is accepted by the Holders of at least two-thirds (2/3) in dollar amount and one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

7.4     Cramdown.  If all applicable requirements for confirmation of this Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code except subsection (8) thereof, the Debtor intends to request that the Bankruptcy Court confirm this Plan in accordance with

section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8).

       7.5   <u>Executory Contracts</u>.  There are no known unexpired executory or lease contracts.

## ARTICLE 8 – FORMATION AND ADMINISTRATION OF THE LIQUIDATING TRUST

       8.1   <u>Summary.</u>  Assuming payment in full of Classes 2, 3 and 4 at the closing of the sale of Carriage Way, and further assuming transactional costs of ten percent (10%), there will be an anticipated distribution of approximately $142,500.00 to Renasant.  Consequently, it is anticipated that Renasant shall contribute $30,000.00 to the Liquidating Trust.  Further, assuming that the non-exempt assets of the Debtor are liquidated at a thirty percent (30%) discount from the scheduled values,  approximately $80,000.00 additional funds will be available to the Liquidating Trust for distribution to pay allowed administrative claims and some or all of classes Classes 6 and 7 together with the distribution of any funds realized from the pursuit of any Avoidance Actions as defined herein.

       8.2   <u>Formation, Duties and Power of Liquidating Trust</u>. The Liquidating Trust shall be established and shall become effective on the Effective Date.  Except as otherwise set forth herein, all Distributions to Holders of Allowed Claims shall be from the Liquidating Trust.  The Liquidating Trust shall be administered for the benefit of all Allowed Claims pursuant to the provisions of Article 9  hereof, the Liquidating Trust Agreement and any post-confirmation Orders of the Bankruptcy Court necessary or appropriate to permit the Liquidating Trustee to implement or modify the Liquidating Trust for the benefit of its beneficiaries.

       8.3   <u>Sale of Purchased Assets</u>.  At, or after the Confirmation Hearing, the Plan contemplates that the Court may approve the Sale of the Real Estate.  The Court may approve the Sale in a separate Sale Order.  The Sale may be closed upon the entry of the Sale Order and the Confirmation Order (which may be one order), notwithstanding that either or both of such orders are not final.  In accordance any Sale Order, the Liquidating Trustee will close the Sale.  To the extent that no sale agreement exists as of the date of Confirmation, the Court shall retain jurisdiction to entertain such motions for a Sale Order as to all or a portion of the Real Estate as may be appropriate to effectuate the Plan.

       8.4   <u>Distributions from Liquidating Trust</u>. On the Effective Date, the Liquidating Trustee shall take possession of all Property of the bankrupt estate and shall distribute said Property in accord with this Plan, the Liquidating Trust Agreement, the Confirmation Order and any such other order as may be entered by the Court.  In the event of any conflict in terms, the Confirmation Order shall control.

       8.5   <u>Injunctions; Stays</u>.  Any injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

8.6     Vesting of Interests in Property of Debtor's Estate.  On, and as of the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, all Property of the Estate and all assets of the Estate, including, without limitation, ownership of all rights of the Debtor under this Plan, the Confirmation Order, and all other orders entered by the Bankruptcy Court in the Chapter 11 Cases on or prior to the Effective Date, all the interests of the Debtor in real or personal property (whenever acquired), all Causes of Action, and all other assets of any kind not otherwise distributed or released under this Plan, and all books and records related to the Estates, shall be transferred to and vest in the Liquidating Trust and be deemed contributed thereto free and clear of Liens, claims and encumbrances, subject to the terms of this Plan. Nothing in this subsection, however, shall preclude payment of statutory fees under section 1930 of Title 28 of the United States Code to the extent unpaid on the Effective Date.  The Debtor is hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of its Property to the Liquidating Trust, including, without limitation, all assets of the Debtor.

8.7     Power of Attorney.  In the event Debtor fails to deliver any and all documents required under this Plan, then pursuant to the power of attorney hereby granted to the Liquidating Trustee, the Liquidating Trustee may execute and deliver on behalf of the Debtor any documents necessary or appropriate to consummate or implement this Plan.  Said power of attorney shall be utilized by the Liquidating Trustee for the completion of any documents on behalf of the Debtor which the Debtor fails to execute and deliver as required herein.   In furtherance of this appointment, the Debtor hereby irrevocably constitute and appoint the Liquidating Trustee as its true and lawful attorney, coupled with the interest created hereby, with full power of substitution, for the Debtor and in its name, place and stead, provided that such appointment shall be effective upon the Effective Date, to ask, demand, collect, receive, receipt for, sue for, compound and give acquaintance for any and all sums or properties which may be or become due, payable or distributable in connection with or with respect to the Property, with full power to settle, adjust or compromise any claim thereunder or therefore as fully as the Debtor could itself do, and to endorse or sign the name of the Debtor on all negotiable instruments and any other documents, either in its own name or in the name of the Debtor or otherwise, which the Liquidating Trustee may deem necessary or appropriate to transfer any and all of the Property, or which may be necessary or appropriate to protect and preserve the right, title and interest of the Liquidating Trust in and to such Property.  Notwithstanding the foregoing power of attorney, the Confirmation Order shall be deemed to be an Order of the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 7070(a) that, among other things, directs the Debtor to execute and deliver any and all documents necessary or appropriate to consummate or implement this Plan on behalf of the Debtor, and that furthermore, by operation of law under Federal Rule of Bankruptcy Procedure 7070(b), vests all of the Property in the Liquidating Trust.

8.8     Causes of Action.  Any Causes of Action against Persons or Entities shall constitute Property, and shall be vested in the Liquidating Trustee as of the Effective Date as the representative of the Debtor's Estate for this purpose and may be prosecuted by the Liquidating Trustee.

8.9     Representative of the Estate.  The Liquidating Trustee shall be the representative of the Estate of the Debtor pursuant to section 1123(b)(3)(B) under the Bankruptcy Code for purposes of prosecuting Causes of Action to the extent provided in Article 8.8 above, including, without limitation, all counterclaims, defenses, affirmative defenses, and all other legal and equitable rights relating thereto.

## ARTICLE 9 - CLAIMS AND DISTRIBUTIONS

9.1     Liquidating Trustee as Disbursing Agent.  The Liquidating Trustee shall serve as Disbursing Agent for the purpose of making all Distributions required under the Plan.

9.2     Time and Manner of Distributions Under this Plan.  Except as otherwise set forth herein or otherwise ordered by the Bankruptcy Court, on the Effective Date, the Liquidating Trustee shall establish deposit and reserve accounts, for the Holders of Allowed Claims to make payments to such Holders in accordance with this Plan.  All Distributions to be made or otherwise reserved pursuant to this Plan shall be held by the Liquidating Trust in trust in such accounts for the benefit of the Holders of Allowed Claims entitled to receive Distributions.

9.3     Delivery of Distributions to Holders of Claims.  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to be made to Holders of Allowed Claims shall be made at (a) the address of each Holder as set forth in the Schedules filed with the Court unless superseded by the address set forth on proof(s) of Claim filed by such Holder, or (b) the last known address of such Holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Liquidating Trust may, in its discretion, make such efforts to determine the current address of the Holder of the Claim or Interest with respect to which the Distribution was made as the Liquidating Trust deems appropriate, but no Distribution to any Holder shall be made unless and until the Liquidating Trust has determined the then-current address of the Holder, at which time the Distribution to such Holder shall be made to the Holder without interest.  Amounts in respect of any undeliverable Distributions made through or by the Liquidating Trust shall be returned to, and held in trust by, the Liquidating Trust until such Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code or as set forth herein.

9.4     Undeliverable Distributions as Unclaimed Property.  Except with respect to property not distributed because such property is being held in a Disputed Claim Reserve, Distributions that are not claimed by the expiration of six (6) months from the date such Distribution was made, shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest in and be retained by the Liquidating Trust, and the Claims with respect to which such Distributions are to be made shall be automatically canceled and extinguished. After the expiration of the six-month period referenced in the preceding sentence, the Claim of any Person or Entity to such Distributions shall be discharged and forever barred. Nothing contained in this Plan shall require the Liquidating Trust to attempt to locate any Holder of an Allowed Claim.

9.5    <u>Objections to Claims</u>.  On and after the Effective Date, the Liquidating Trust  may object to any claims not already determined to be an Allowed Claim pursuant to a Final Order. All such claims objections must be filed prior to any Distributions being made on account of the Claim, and scheduled Claims that are subject to any such objection shall not be deemed Allowed Claims pending resolution of the objection with respect thereto.  Subject to Bankruptcy Court approval, objections to Claims may be litigated to judgment, settled or withdrawn. Distributions with respect to and on account of Claims to which objections have been filed will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order. Notwithstanding the foregoing, (i) the Bankruptcy Court shall overrule any objections to Claims that are deemed Allowed Claims under this Plan and (ii) any proof of Claim filed after the Bar Date shall be automatically disallowed as a late Filed Claim, without any action by the Debtor or the Liquidating Trustee, unless and until the party Filing such Claim obtains the written consent of the Debtor and, or after the Effective Date, the Liquidating Trustee, to File such Claim late or obtains an order of the Bankruptcy Court upon notice to the Debtor and the Liquidating Trustee that permits the late Filing of the Claim, in which event, the Debtor, or after the Effective Date, the Liquidating Trustee, shall have thirty (30) days from the date of such written consent or order to object to such Claim, which deadline may be extended with the written consent of the Holder of such Claim or by the Bankruptcy Court upon motion of the Debtor, or after the Effective Date, the Liquidating Trustee, without notice or a hearing.

9.6    <u>Withholding Taxes</u>.  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.  All Persons holding Claims shall have an affirmative duty and be required to provide any information necessary to effect the withholding of such taxes, including its Federal Tax Identification Number or Social Security Number.

9.7    <u>Fractional Cents</u>. Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole cent (up or down), with half cents or less being rounded down and fractions in excess of half a cent being rounded up.

9.8    <u>Interim Distributions in Nominal Amounts</u>.  Any other provision of this Plan to the contrary notwithstanding, the Liquidating Trustee is under no obligation to make any interim distribution to any holder of an Allowed Claim if such interim distribution would be equal to less than $25.00.  In the event such distribution would have been less than $25.00, the Liquidating Trustee may, in its sole discretion, be permitted to forego making such distribution until the earlier of: (i) the date such distribution would be in excess of $25.00, or (ii) the final distribution date.

9.9    <u>Setoffs</u>.  Except as otherwise provided for herein, the Debtor, or after the Effective Date, the Liquidating Trustee, may, but shall not be required to, set off against any Claim and the Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or its Estate, either individually or collectively, may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtor, the Liquidating Trust or the Estates of any Claim they may have against such Creditor; provided that in no event shall the Debtor or the Liquidating Trustee set off, or be permitted to set off, against any Claims Allowed under this Plan.

15

9.10     Interest on Claims. Interest shall not accrue or be payable on Claims against the Debtor's estate after the Effective Date, including on Disputed Claims.

9.11     Ordinary Course Liabilities**.** If not otherwise paid in full by the Debtor in the ordinary course of its business subsequent to the Petition Date, Holders of Claims against the Debtor for liabilities incurred after the Petition Date shall be required to File a request for payment of Administrative Claims not later than the Administrative Claims Bar Date which shall first be paid out of any cash on hand of the Debtor, and if said funds are insufficient, then as a Carve-Out Claim.

9.12     Rejection of All Remaining Executory Contracts.  There are no known executory contracts of the Estate. To the extent that any exist, as of the Effective Date, all executory contracts not otherwise assumed or rejected pursuant to the Sale and/or any prior Final Order entered by the Bankruptcy Court shall be deemed rejected by the Debtor.  All non-Debtor parties to any such rejected Executory Contract shall have thirty-five (35) days from the Effective Date to file any claim arising from the rejection of such executory contract (the "**Rejection Damages Bar Date**") which, if allowed, shall first be paid out of any cash on hand of the Debtor, and if said funds are insufficient, then as a Carve-Out Claim.

9.13     Assumption of Obligations Under this Plan. On the Effective Date, the obligations to make the Distributions required by this Plan shall be assumed by the Liquidating Trust.


### ARTICLE 10 - CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

10.01     Conditions Precedent to Entry of Confirmation Order. The following are conditions precedent to Confirmation of this Plan:

(a) The Clerk of the Bankruptcy Court shall have entered an order approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; and

(b) The Confirmation Order, this Plan and all of the Plan Supplement documents, shall be, in form and substance, acceptable to the Debtor and the Committee, in their reasonable discretion.

10.02     Effective Date Conditions. The Plan shall become effective (the "**Effective Date**") when each of the following conditions has been satisfied:

(a) The Bankruptcy Court shall have entered the Confirmation Order in each of the Chapter 11 Cases;

(b) The Confirmation Order shall have become a Final Order in each of the Chapter 11 Cases;

(c) All statutory fees then due to the United States Trustee shall have been paid in full;

(d) The Liquidating Trust Agreement shall have been executed by the the Liquidating Trustee and approved by the Court; and

(e) All other actions and documents necessary to implement this Plan as of the Effective Date shall have been effected or duly executed and delivered to the required parties.

The Effective Date shall be the first Business Day fifteen (15) days after the entry of a final, non-appealed Confirmation Order by the Court, provided that the Bankruptcy Court may, for cause shown, extend the time for the occurrence of the Effective Date.

10.03   <u>Waiver of Conditions</u>. The Debtor, in its sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive any or all of the conditions set forth herein, subject to Court approval.  The Debtor, and after the Effective Date, the Liquidating Trustee, reserves the right to assert that any appeal from the Confirmation Order shall be moot after substantial consummation of this Plan.

10.04   <u>Notice of Effective Date</u>.  On or before three (3) Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all known Holders of Claims, Administrative Claims and parties to rejected executory contracts and unexpired leases a Notice that informs such Holders and parties of (a) entry of the Confirmation Order; (b) the occurrence of the Effective Date; and (c) such other matters as the Liquidating Trustee deems to be appropriate.

## **ARTICLE 11 - EFFECTS OF PLAN CONFIRMATION**

11.1   <u>Binding Effect; Plan Binds All Holders of Claims and Equity Interests</u>. On the Effective Date, this Plan shall, and shall be deemed to, be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims against and Interests in the Debtor, and their respective successors and assigns, including, but not limited to, the Liquidating Trustee, regardless of whether any such Holder failed to vote to accept or reject this Plan or affirmatively voted to reject this Plan.

11.2   <u>Releases and Related Injunctions</u>.

(a)   <u>Releases by the Debtor</u>. On and after the Effective Date, pursuant to 28 U.S.C. §1651 and sections 105, 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code, and except as otherwise provided in this Plan or the Confirmation Order, the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in her own right or on behalf the Holder of any Claim or

17

Debtor's Interest or other Entity, based on, relating to, or in any manner arising from, in whole or in part, (a) the Chapter 11 Cases, (b) the negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, or (c) the implementation or consummation of the Plan, including all conveyances of Property pursuant to the Liquidating Trust Agreement. The release and discharge set forth herein is granted for good and valuable consideration, including the service of the Released Parties to facilitate the implementation of the Plan including, as applicable, in their roles as plan proponents.

(b)    <u>Releases by Holders of Claims and Debtor's Interests</u>. Effective as of the Effective Date, for good and valuable consideration, including the service of the Released Parties to facilitate the implementation of the Plan including, as applicable, in their roles as plan proponents, to the fullest extent permissible under applicable law, the Holders of Claims and Debtor's Interests and each of their Related Persons will be deemed to completely and forever release, waive, void, extinguish and discharge each of the Released Parties from any and all Claims, obligations, demands, debts, rights, suits, damages, Causes of Action, judgments, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, existing or hereinafter arising, in law, equity, or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to, or in any manner arising from, in whole or in part, (a) the Chapter 11 Cases, (b) the negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents or (c) the implementation or consummation of the Plan, including all conveyances of Property pursuant to the Liquidating Trust Agreement and that the Holder of any Claim or Debtor's Interest would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf the Holder of any Claim or Interest or other Entity or against any of the Released Parties, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

11.3    <u>Injunction Related to Releases</u>. The Confirmation Order will permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Claims (including Avoidance Actions and other Causes of Action) or liabilities released pursuant to this Plan, provided however, that there shall be no release, stay or injunction granted by the Plan as to any Avoidance Action or Causes of Action retained by the Liquidating Trustee.

11.4    <u>Injunction</u>. Except as otherwise expressly provided in the Plan, the Confirmation Order shall provide that, from and after the Effective Date, all Entities who have held, hold, or may hold, Claims or Debtor Interests, or are subject to exculpation pursuant to Article 11 of the Plan, are permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Debtor's Interests; (b) enforcing, attaching, collecting,

18

or recovering by any manner or means any judgment, award, decree, on account of or in connection with or with respect to any such Claims or Debtor's Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Debtor or Released Party or the property or Estate of such Person on account of, in connection with or with respect to any such Claims or Debtor's Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any Debtor on account of, in connection with or with respect to any such Claims or Debtor's Interests unless, such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication in a proof of Claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Debtor's Interests.

11.5    Exculpation. Except as otherwise specifically provided in the Plan, no Debtor or Released Party shall have or incur, and each Released Party is released and exculpated from any Claim, obligation, Cause of Action, or liability based on or relating to, or in any manner arising from, in whole or in part, (a) the Chapter 11 Cases, (b) the negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, except for gross negligence, willful misconduct, or fraud as determined by a Final Order, or (c) the implementation or consummation of the Plan, including all conveyances of Property pursuant to the Liquidating Trust Agreement, but in all respects such Persons or Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtor, and the Released Parties and each of its and their Affiliates, officers, directors, principals, employees, agents, advisors, attorneys, accountants, consultants, representatives, and other professionals have, and upon the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to Distributions set forth pursuant to the Plan, and therefore are not, and on account of any such Distribution shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or any such Distribution made pursuant to the Plan.

11.6    No Discharge of Claims / Discharge of Debtor. Pursuant to Section 1141(d)(3) of the Bankruptcy Code, entry of the Confirmation Order will not discharge Claims against the Debtor; provided however, no Holder of a Claim or Debtor's Interest, may on account of such Claim or Debtor's Interests, seek or receive any payment or other distribution from, or seek recourse against, the Debtor's Estate, the Released Parties, or their respective successors, assigns or property, except as expressly provided in this Plan. Upon motion, notice and hearing, the Debtor may seek a discharge pursuant to Section 1141(d)(5).

11.7    Reservation of Rights. Notwithstanding any term or provision thereof to the contrary, nothing contained in Article 8 hereof shall be deemed to be a waiver or release of any of the rights or obligations of any of the Holders of Claims under the other terms and provisions of this Plan or the Confirmation Order.

11.8    Term of Injunctions and Stays. Unless otherwise provided herein or in the relevant orders applicable thereto, all injunctions or stays provided for in any adversary proceeding or the Chapter 11 Cases and in effect on the Confirmation Date shall remain in full force and effect until

19

the Effective Date, whereupon the discharge and permanent injunctions set forth in this Plan and in the Confirmation Order shall take effect.

## ARTICLE 12 - RETENTION OF JURISDICTION

12.1    <u>Retained Jurisdiction after Confirmation</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or this Plan, or (c) that relates to the following:

(a) <u>Claims</u>.  To determine the amount, allowability, allocability, classification, or priority of Claims against the Debtor, including (without limitation) rejection claims arising pursuant to section 502(g) of the Bankruptcy Code, upon motion or upon objection to any Claim by the Debtor, the Liquidating Trust or any other party in interest;

(b) <u>Claims Estimation</u>.  To estimate Claims for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code, including (without limitation) estimation of Claims of Creditors asserting setoff or rights of recoupment against amounts owed to the Debtor;

(c) <u>Injunctions, etc</u>.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of this Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Person or Entity;

(d) <u>Professional Fees</u>. To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, as provided for in this Plan;

(e) <u>Administrative Claims</u>.  To determine any Administrative Claims or any requests for payment of Administrative Claims, and any objections thereto;

(f) <u>Dispute Resolution</u>. To resolve any dispute arising under or related to (i) the implementation, execution, consummation or interpretation of this Plan and the making of Distributions thereunder or (ii) the Confirmation Order, including, without limitation, any dispute concerning payment of Professional Fees and expenses and any dispute pertaining to implementation of this Plan;

(g) <u>Actions</u>.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the

closing of the Chapter 11 Cases, except any action in which the Debtor is a plaintiff in any state or federal court (other than the Bankruptcy Court) as of the Effective Date;

(h) <u>Compromise and Settlements</u>. To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim, including any Cause of Action by, on behalf of, or against the Debtor or the Liquidating Trustee;

(i) <u>Tax Issues</u>. To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor, Debtor in Possession or the Liquidating Trustee may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(j) <u>Setoff and Recoupment.</u> To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtor or any Person asserting such rights against the Debtor or the Liquidating Trustee;

(k) <u>General Matters</u>. To determine such other matters that may be set forth in this Plan, the Confirmation Order or related thereto, and for such other purposes, as may be provided in the Confirmation Order as may be authorized under provisions of the Bankruptcy Code;

(l) <u>Plan Modification</u>. To modify this Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order so as to carry out its intent and purposes;

(m) <u>Deadlines</u>. To extend any deadline, timetable or timeline set forth in the Plan upon the filing of a motion by any party in interest;

(n) <u>Aid Consummation</u>. To issue such orders in aid of consummation of this Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by section 1142 the Bankruptcy Code;

(o) <u>Implementation of Confirmation Order.</u> To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; and

(p) <u>Final Order</u>. To enter a Final Order confirming substantial consummation of the Plan and the entry of a Final Decree closing the Chapter 11 Cases.


### ARTICLE 13 - MISCELLANEOUS PROVISIONS

13.1   <u>Pre-Confirmation Modification</u>. This Plan may be altered, amended or modified by Renasant before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

To the extent that any such alteration, modification or amendment does not adversely affect the interest of Holders of Claims, such alteration, modification or amendment may be set forth in the Confirmation Order rather than be filed as an amended Plan. In the event of any conflict between the terms of the Plan (as it may be amended from time to time as set forth herein) and the Confirmation Order, then the Confirmation Order shall govern with respect to such conflict.

13.2    Post-Confirmation Immaterial Modification. The Debtor may, and without notice to all other Holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

13.3    Post-Confirmation Material Modification. This Plan may be altered or amended after the Confirmation Date by Renasant in a manner that, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, provided that such alteration or modification is made after a hearing as provided in section 1127 of the Bankruptcy Code.

13.4    Withdrawal or Revocation of this Plan. Renasant reserves the right to revoke or withdraw this Plan prior to the Effective Date. If Renasant revokes or withdraws this Plan, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.

13.5    Payment of Statutory Fees. All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date or as soon as practicable thereafter or when otherwise due from the assets of the Estates.

13.6    Successors and Assigns. The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors or assigns of such Entities.

13.7    Governing Law. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Georgia.

13.8    Notices. Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

(a)    To Renasant:

Eric J. Breithaupt
Stites & Harbison, PLLC
303 Peachtree Street, N.E.
2800 SunTrust Plaza
Atlanta, GA 30308

        (b)     <u>To the Debtor</u>:

April Latrice Spencer
c/o Howard Rothbloom
The Rothbloom Firm
309 East Paces Ferry Road, NE, Suite 400
Atlanta, GA   30305

        (c)     <u>To the United States Trustee</u>:

Vanessa Leo, Trial Attorney
Office of the United States Trustee
362 Richard Russel Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

13.9    <u>Saturday, Sunday or Legal Holiday</u>. If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.10    <u>Section 1146 Exemption</u>. Pursuant to section 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, this Plan or the revesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, this Plan, shall not and may not be taxed under any state or local law imposing a stamp tax, transfer tax, sales tax or similar tax or fee.

13.11    <u>Severability</u>. If any term or provision of this Plan is held by the Bankruptcy Court, prior to or at the time of Confirmation, to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan may, at Renasant's option remain in full force and effect and not be deemed affected. However, Renasant reserves the right not to proceed to Confirmation or consummation of this Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.12    <u>Headings.</u> The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

Respectfully submitted this 18th day of August 2022.


_/s/ Eric J. Breithaupt_____
Eric J. Breithaupt

Stites & Harbison, PLLC                    Georgia Bar Number 596142
303 Peachtree Street, N.E.                 As Counsel for Renasant Bank
2800 SunTrust Plaza
Atlanta, GA 30308
Telephone:  404-739-8974
Facsimile:   404-739-8870
ebreithaupt@stites.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                                                    CHAPTER 11

APRIL LATRICE SPENCER,

        Debtors.                                          CASE NO.: 22-52524-BEM

## **CERTIFICATE OF SERVICE**

I, Eric J. Breithaupt, of the firm of Stites & Harbison, PLLC, 303 Peachtree Street, N.E., 2800 SunTrust Plaza, Atlanta, GA 30308, certify:

That I am, and at all times hereinafter mentioned, was more than 18 years of age;

That on the 18th day of August, 2022, the following parties in the above-styled case were served a copy of the *Chapter 11 Liquidating Plan of Reorganization Proposed by Renasant Bank* on this date either by electronic means of the Court or via First Class U.S. Mail:

| | |
|---|---|
| April Latrice Spencer<br>648 Carriage Way<br>Atlanta, Georgia 30327 | The Rothbloom Law Firm<br>Attn: Howard D. Rothbloom<br>309 E. Paces Ferry Road, Suite 400<br>Atlanta, Georgia 30305 |
| Vanessa A. Leo<br>Office of the United States Trustee<br>362 Richard B. Russell Building<br>75 Ted Turner Drive SW<br>Atlanta, Georgia 30303 | Navient<br>P.O. Box 9533<br>Wilkes barre, PA 18773 |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101 | U.S. Small Business Administration<br>2 North Street, Suite 320<br>Birmingham, AL 35203 |
| Amin, Turocy & Watson<br>200 Park Avenue, Suite 300<br>Beachwood, OH 44122 | Wells Fargo Bank, N.A.<br>P.O. Box 10438, MACF8235-02F<br>Des Moines, IA 50306 |

716024:1:ATLANTA

Capital One Bank                           Fulton County Tax Commissioner
P.O. Box 85064                             141 Pryor Street
Richmond, VA 23285                         Atlanta. Georgia 30303

Ameris Bank                                US Department of Education
c/o Ameris Bank                            P.O. Box 16448
1 Corporate Drive                          Saint Paul, MN 55116
Lake Zurich, IL 60047


     YOUR RECEIPT OF THIS PLAN IS ONLY INFORMATIONAL AND NOT INTENDED AS A SOLICITATION.  YOU RECEIVED A COPY OF THE PLAN BECAUSE YOU HAVE MADE AN APPEARANCE IN THIS BANKRUPTCY CASE.

     I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

     Done this  August 18th, 2022.

                               */s/ Eric J. Breithaupt*
                               Georgia Bar No. 596142